785 A.2d 33 (2001)
345 N.J. Super. 306
Joseph MARTINELLI, t/a Blue Jay Farms, Plaintiff-Respondent,
v.
FARM-RITE, INC., Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued October 11, 2001.
Decided November 21, 2001.
Frank G. Basile, Vineland, argued the cause for appellant (Basile & Testa, attorneys; Mr. Basile and Renee E. Scrocca, on the brief).
Michael J. Weiss, Cherry Hill, argued the cause for respondent.
Before Judges KING, CUFF and WINKELSTEIN.
The opinion of the court was delivered by WINKELSTEIN, J.A.D.
The question presented is whether the failure of defense counsel's computer diary system to pick up the date to appeal an *34 arbitrators' award constitutes an extraordinary circumstance allowing relaxation of the thirty-day time frame within which to demand a trial de novo. R. 4:21A-6(b)(1). The motion judge, in an oral decision, concluded that a computer failure did not constitute an "extraordinary circumstance" under the rule. We agree and affirm.

I
Plaintiff, who operates a farm in Hammonton, New Jersey, claims defendant supplied him with a defective water pump resulting in the loss of his blueberry crop in 1993. Suit was filed on October 30, 1998 and the case was referred to arbitration on May 19, 2000. See R. 4:21A-1 to-8 (1999). Although the Rule as then-enacted applied only to automobile negligence and other personal injury actions, by Supreme Court Orders dated June 3, 1997 and March 16, 1998 the rules of court were modified to permit referral of all civil cases filed in Atlantic County (with certain exceptions not applicable to this case) to arbitration.
Upon completion of the arbitration proceeding, the arbitrators assessed liability at eighty percent upon defendant and twenty percent upon plaintiff; they awarded plaintiff damages of $150,000. Neither party filed a notice of rejection of the award and demand for a trial de novo within thirty days after the arbitration award was filed. See R. 4:21A-6(b)(1). On June 20, 2000 plaintiff filed a motion to confirm the arbitration award, R. 4:21A-6(b)(3), which defense counsel received on June 22, 2000. Upon receipt of the motion defense counsel reviewed his file. He discovered that due to an apparent system failure, his computerized diary had not alerted him to file a demand for a trial de novo within the thirty-day time period as required by R. 4:21A-6(b)(1).
Defense counsel's office was in the end stage of converting from an Alpha-Micro Mainframe Computer System to a local area network (LAN) PC Service System. Counsel relied on the computer "markup" system to diary statutes of limitations and other deadlines, including a diary notation to alert him when to file a demand for a trial de novo. Counsel had no backup diary system. Without dispute, counsel had no reason to suspect, in advance of the incident, that the system would not operate correctly. Not until counsel received the motion to confirm the arbitrators' award did the system failure become known and was the loss of the diary notation discovered.
At oral argument defense counsel acknowledged that he was unaware of any other circumstance in which the system failed. Although the reason for the system failure has not been conclusively determined, counsel suspects it was a malfunction of the system's software.

II
The thirty-day period to file a notice of rejection of an arbitrators' award and demand for a trial de novo may be extended upon a showing of extraordinary circumstances. Hartsfield v. Fantini, 149 N.J. 611, 616-17, 695 A.2d 259 (1997) (citing Mazakas v. Wray, 205 N.J.Super. 367, 370-71, 500 A.2d 1085 (App.Div.1985)). In Mazakas, we cautioned that, when neither party has made a timely motion for a trial de novo, the court's power to extend the time frame "must be sparingly exercised with a view to implementing both the letter and the spirit of the compulsory arbitration statute and the rules promulgated pursuant thereto, to the end that the arbitration proceedings achieve finality." 205 N.J.Super. at 372, 500 A.2d 1085. To relax the thirty-day rule, a court must determine that "extraordinary circumstances" *35 exist and that those circumstances did not arise from an attorney's "mere carelessness" and "lack of proper diligence." Hartsfield, 149 N.J. at 618, 695 A.2d 259 (citing In re T., 95 N.J.Super. 228, 235, 230 A.2d 526 (App.Div.1967)).
A fact-sensitive analysis is necessary in each case to determine what constitutes an extraordinary circumstance. Hartsfield, 149 N.J. at 618, 695 A.2d 259. In Hartsfield, the attorney's failure to supervise his secretary and review his diary was not considered an extraordinary circumstance. Id. at 619, 695 A.2d 259; see also Wallace v. JFK Hartwyck at Oak Tree, Inc., 149 N.J. 605, 610, 695 A.2d 257 (1997) (concluding that writing the wrong date on a calendar, causing the thirty-day period to be missed, did not qualify as an extraordinary circumstance warranting an extension for the attorney); Behm v. Ferreira, 286 N.J.Super. 566, 574, 670 A.2d 40 (App.Div.1996) (finding that an attorney's failure to supervise staff is generally insufficient to allow a late demand for a trial de novo); Hart v. Property Mgmt. Sys., 280 N.J.Super. 145, 147-49, 654 A.2d 1012 (App.Div.), certif. denied, 141 N.J. 99, 660 A.2d 1197 (1995) (holding that extraordinary circumstances did not exist where the associate in the law firm who was present at the arbitration hearing returned the arbitrators' award to the attorney handling the matter, then subsequently left the firm without filing a notice of rejection of the award and demand for trial de novo).
In Flagg v. Township of Hazlet, 321 N.J.Super. 256, 260, 728 A.2d 847 (App. Div.1999), in an attempt to define the term "extraordinary," we looked to Websters 3d New International Dictionary Unabridged 807 (1971). We found that the word "extraordinary," "in common parlance, denotes something unusual or remarkable. The dictionary includes among its definitions of the word: `exceptional to a very marked extent: most unusual: far from common ... rarely equal: singular, phenomenal: strikingly impressive ... having little or no precedent and usually totally unexpected....'"
In the context of deciding whether a computer malfunction was sufficient to justify a defendant's late submission of an omitted-assessment list to the County Board of Taxation, the Tax Court found that the law made no exceptions for computer malfunctions. American Hydro Power Partners v. City of Clifton, 11 N.J.Tax 12, 20 (Tax 1990). The court reasoned, "[i]t was incumbent upon defendant's assessor to prepare the list manually, if need be, just as assessments lists were prepared prior to the advent of today's sophisticated technology." Ibid.
We agree that a computer malfunction is not sufficient justification for late submission of documents to the court, whether required by statute, court rule or court order. One does not need to be an expert to recognize that computers do not always work. It is not uncommon for previously accessible data to suddenly disappear. There can be any number of reasons why a computer system fails. There can be human errors inputting and accessing the data, electrical failures, power surges, and computer viruses. Not all programs are as dependable as others. Quite simply, systems fail regularly and do not always perform to their specifications. Such an occurrence is neither exceptional, unusual, nor without precedent. A recent article discussing computer failures that resulted in a halt in trading on the New York Stock Exchange on June 8, 2001, highlights this point:
[E]ven the most sophisticated IT environments are vulnerable to failure, usually caused by human error or process failure.... The complexity of today's IT infrastructures and applications makes *36 managing these systems to very high levels of availability enormously difficult.
* * * *
Of all the causes of people and process failures, the most common is change.
[Terry Allan Hicks, NYSE System Failure Shows Enterprise Vulnerabilities, at http://www3.gartner.com/DisplayDocument?id =331459 & acsFlg=accessBought; see also Roger C. Schechter, Legal Tech: Plan To Prevent A Computer Disaster While Planning To Recover From One, 166 N.J.L.J. 81, 125 (October 8, 2001) (detailing a number of threats to computer operations and discussing what steps should be taken by a law firm to avoid a computer disaster).]
Counsel had control over what type of diary or markup system to use. He had a choice to rely on one or more electronic systems, a manual system, or a combination of systems. As Judge Higbee stated in denying defendant's motion, it becomes a question of how an attorney manages an office, what systems to set up and how they are monitored. She said:
[w]hether you're relying on a[n] associate, a secretary or a computer, it's your job to make sure whatever you rely on is working and functioning well. And if it's not, you have [to] bear the risk....
The judge properly concluded that defense counsel's computer failure did not qualify as an extraordinary circumstance to allow extension of the time within which to file for a trial de novo. Here, counsel has been unable to conclusively determine the cause of the system failure. It may have been attributable to human error, a hardware or software malfunction, or the conversion of the system from an Alpha Micro Mainframe system to a LAN system. Whatever their nature, however, system failures are common occurrences in a modern office environment. For most practitioners, computers have revolutionized their practice. They generally result in substantial savings of time and money. But they come with a costthey are technologically complex and do not always work.
Computer failures, not unlike human failures, must be anticipated. Just as with a manual diary system, where it is commonplace to have at least one backup system available in anticipation of mistakes which are bound to be made by attorneys and other office staff, the same should hold true when a diary system is computerized. In today's environment a computer failure, which results in the late filing of a demand for trial de novo, must be treated the same as a wrong date marked on a calendar or the failure of an attorney to properly supervise staff. It is an occurrence that can be anticipated and guarded against.
Computer technology has been embraced by the courts. In both the Special Civil Part and the Appellate Division, filing documents electronically is permitted. See Notice to the Bar: Statewide Expansion of Electronic Filing in the Special Civil Part, 161 N.J.L.J. 254 (July 17, 2000); Notice to the Bar: Electronic Filing of Notices of Appeal with the Appellate Division, 160 N.J.L.J. 353 (April 24, 2000). But the fact that computers will be routinely used to file electronically, in what may ultimately become a paperless court, does not excuse the late electronic filing of documents or notices. On the contrary, with an increase in electronic filings, permitting a computer failure to justify a late submission would open the proverbial floodgates for violations of deadlines imposed by statutes, court rules and court orders.
"[T]he arbitration program has been well-established for several years and attorneys are well aware of the thirty-day rule." Hartsfield, 149 N.J. at 620, 695 *37 A.2d 259. An attorney is compelled to determine the appropriate method to assure compliance with the thirty-day rule. To permit a computer failure to constitute an excuse to file late is contrary to the underlying goals of the arbitration processto bring about an inexpensive, expeditious adjudication of disputes and to help ease the caseload of the courts. Behm, 286 N.J.Super. at 573-74, 670 A.2d 40.

III
Appellant also raises on appeal whether the arbitrators properly denied defendant's motion to bar plaintiff's expert's testimony. Arbitrators' decisions concerning the admission of evidence during the arbitration proceedings are not subject to appeal. R. 4:21A-6(a). Moreover, if defendant was successful on appeal, he would have been entitled to a trial de novo. As he was unsuccessful on appeal, the case is dismissed. In either event, there is no reason to decide the issue.
Affirmed.