NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-5459-14T2

SOFYA REZNIK,

 Plaintiff-Appellant,

v.

AMERICAN HONDA MOTOR CO., INC.
and DCH MONTCLAIR, LLC,

 Defendants-Respondents.
___________________________________

 Submitted October 17, 2016 – Decided July 13, 2017

 Before Judges Fisher and Ostrer.

 On appeal from the Superior Court of New
 Jersey, Law Division, Passaic County, Docket
 No. L-4023-12.

 Jonathan J. Sobel, attorney for appellant.

 Campbell Campbell Edwards & Conroy, P.C.,
 attorneys for respondents (William J. Conroy,
 Tiffany M. Alexander and Katherine A. Wang,
 on the brief).

PER CURIAM

 Plaintiff appeals from an order dismissing with prejudice her

product liability complaint against American Honda Motor Company,
Inc., and one of its dealers, DCH Montclair, LLC.1 She also appeals

from several interlocutory orders related to discovery. We reverse

these interlocutory orders and the dismissal with prejudice as to

Honda, but affirm the dismissal as to DCH on statute of limitations

grounds.

 I.

 We must review in detail the procedural history that

eventually led to the dismissal order. Plaintiff initially filed

her complaint pro se on October 4, 2012. She named only Honda

along with ten fictitious parties as defendants. She alleged that

two years earlier, she suffered significant injuries because the

airbag in her 2010 Acura TSX deployed with excessive force in a

car accident on October 4, 2010. She contended Honda defectively

designed and manufactured the airbag system.

 DCH was added in an amended complaint filed a little over a

year later. Plaintiff, by then represented by counsel, alleged

that DCH leased the Acura to her a few months before the accident.

1
 In her pleadings, plaintiff inaccurately denominated the
manufacturer as "Honda Motor Company" and the dealer as "DCH
Montclair Acura." The caption has been corrected.

 2 A-5459-14T2
DCH later unsuccessfully moved to dismiss the amended complaint

on statute of limitations grounds.2

 The lawsuit proceeded in fits and starts. There were issues

with service.3 Honda did not timely respond to interrogatories

and document demands.4 Also, plaintiff's deposition was started

on August 20, 2014, but not finished. The court extended the

original discovery end date (DED) from August 20, 2014 to March

31, 2015, and required completion of all written discovery by

October 9, 2014, party and third-party depositions by November 20,

service of plaintiff's expert reports by December 31, and

plaintiff's expert deposition by January 30, 2015. Defense expert

2
 DCH filed a protective cross-appeal from that order, but
abandoned it, contending instead that its statute of limitations
argument provided an alternative basis for affirming the court's
subsequent dismissal with prejudice. We note that four different
trial judges handled this matter over the relevant period. In
general, we see no need to distinguish among them.
3
 Plaintiff purported to serve Honda by causing delivery of the
summons and complaint to a dealership in Wayne in April 2013.
Seven months later, her counsel obtained entry of default against
Honda after purporting to serve its request for entry of default
by a mailing to the Wayne dealer. The dealer then contacted Honda.
Honda's counsel and plaintiff entered into a consent order in
December 2013 vacating the default judgment and permitting Honda
to file an answer.
4
 Plaintiff served form discovery on Honda in April 2014.
Plaintiff obtained an order striking Honda's answer without
prejudice in July 2014 after receiving partial responses. Honda
provided its full response in August and sought an order vacating
the order, which was granted in October 2014.

 3 A-5459-14T2
disclosures and depositions were slated for February and March

2015. The order also barred the parties from filing motions

"without first contacting the Court in writing and obtaining leave

of the Court."

 Despite the court's order, discovery did not proceed as

planned. On November 13, 2014, DCH's counsel wrote to the court

to complain that plaintiff had not appeared at three previously

proposed dates for continuing her deposition. Plaintiff's counsel

reportedly had adjourned the depositions, citing plaintiff's

health. Defense counsel recounted that he asked plaintiff's

counsel for a "medical certificate," but received none. While

offering to file a formal motion, counsel asked the court to enter

a proposed form of order compelling plaintiff to appear for her

continued deposition on December 1 and 2, 2014. The court entered

the order the next day, without requiring defendant to file a

motion or indicating whether it sought or received any response

from plaintiff.5

 Then, a dispute between plaintiff and her attorney arose. On

November 26, 2014, the day before Thanksgiving and five days before

5
 The order merely recited that the matter was opened by DCH's
counsel and good cause for the order was shown. The order lacked
a statement of reasons and an indication whether it was opposed.
Cf. R. 1:6-2(a) ("The form of order shall note whether the motion
was opposed or unopposed.").

 4 A-5459-14T2
the ordered deposition dates, plaintiff's counsel filed a

substitution of attorney, stating plaintiff would proceed pro se.

The form stated that plaintiff consented to the substitution, but

plaintiff had not signed it.

 Plaintiff promptly contested her counsel's submission in a

letter to the court filed the same day. She denied she consented

to her attorney's withdrawal. She further contended her attorney

first disclosed her withdrawal as well as the court-ordered

depositions in a letter she had received the previous day.

Plaintiff asked the court to cancel the depositions and grant her

time to find a new attorney. The record does not reflect that the

court responded in any way.

 Conflicting accounts of the attorney's representation of

plaintiff were similarly communicated to DCH's counsel. On the

same day as her substitution filing, plaintiff's counsel disclosed

the substitution to DCH attorneys via email — albeit only in

response to a fortuitously-timed inquiry into whether her client

would attend the December 1 deposition. In her email, plaintiff's

counsel responded that she could not comment on plaintiff's future

appearance as she had filed the substitution of counsel earlier

that day. Plaintiff's counsel also asserted she had notified her

client "verbally and in writing more than once" about the

 5 A-5459-14T2
deposition dates.6 DCH's counsel then emailed plaintiff directly

to inquire if she would appear for the depositions.

 Two days later, on November 28, plaintiff again relayed her

version of the story to DCH's counsel via email. Her message

noted, "Because my lawyer stopped representing me without my

consent and without permission of the Court, I need time to obtain

new counsel." She told counsel her depositions needed to be

rescheduled and her new attorney would "hopefully" contact him

shortly. Plaintiff thereafter did not appear for the depositions.

 On December 1, 2014, DCH's counsel again wrote to the court,

with a copy to plaintiff, seeking an order dismissing plaintiff's

complaint without prejudice based on her failure to attend

depositions. Counsel again offered to file a formal motion if the

court so required. DCH's counsel provided a copy of the November

26 and November 28 emails.

 On December 12, 2014, the court entered the requested order

dismissing plaintiff's amended complaint without prejudice for her

failure to appear at her deposition. The order again did not

6
 DCH's counsel referred to a separate letter from plaintiff's
counsel, addressed to the court, which similarly disputed
plaintiff's claims to the court and counsel. However, DCH chose
not to include that alleged letter in the appellate record. The
record also does not reflect whether the court considered it, or
gave it more credence than plaintiff's version of events.

 6 A-5459-14T2
require DCH to file a motion and did not specify whether opposition

was sought or received from plaintiff.

 Plaintiff secured new representation. On December 22, 2014,

plaintiff retained a second attorney, according to plaintiff's

later-filed certification. She stated she paid $3000 and signed

a retainer agreement. She understood that, after the Christmas

holiday, her new attorney would file "the appropriate motions to

protect . . . and represent" her.

 Her choice of replacement was unfortunate. The attorney did

not file a formal substitution of attorney, nor did he immediately

file any motions. Notably, he was in the midst of an investigation

by the Office of Attorney Ethics, which eventually resulted in a

temporary suspension from the practice of law on February 20,

2015.7

 On February 9, 2015, DCH's counsel faxed a letter to the

trial court, seeking a third discovery sanction without a formal

motion. This time, DCH's counsel asserted plaintiff failed to

timely serve an expert report in accordance with the August case

7
 The disciplinary action followed an effort, extending back to
the Spring of 2014, to conduct a demand audit of the attorney and
his law firm. In a subsequent Supreme Court order, he was ordered
to remain suspended for failing to cooperate with disciplinary
authorities. In addition, he was later suspended for gross
neglect, lack of diligence, failure to inform a client of the
status of a matter, and other violations of the Rules of
Professional Conduct.

 7 A-5459-14T2
management order. DCH's counsel copied the letter to plaintiff,

her former counsel, and to the second attorney (although the record

does not reflect how DCH's counsel learned of his involvement).

Four days later, the court entered the requested order, again

without requiring defendant to file a motion or noting whether the

court sought or considered opposition from plaintiff. A month

later, the court entered the same order, noting this time the

order was "unopposed". The court provided no explanation.

 On March 25, 2015, plaintiff, acting pro se, filed a motion

to place the case on the inactive list. In support, she submitted

the certification recounting the aforementioned struggles with her

attorneys. She again asserted that her first attorney withdrew

without her consent. She said she was unaware that her first

attorney had adjourned a deposition scheduled for October 30,

2014, nor was she aware of the December 1 and 2 deposition dates

until she received her attorney's withdrawal letter on November

25, 2014. Plaintiff also contended she paid her attorney $2500

for an expert and "thought that she had secured what she needed

to present my case." She also stated that she terminated her

second attorney's representation by letter after learning that he

 8 A-5459-14T2
"did nothing" to advance her case.8 She also noted that she had

not been aware of the attorney's suspension. Lastly, plaintiff

stated she attached emails and reports from doctors describing

serious surgery scheduled for April, which she anticipated would

disable her from attending to the case until at least June 15.9

 On May 11, 2015, the presiding judge denied plaintiff's

motion. Noting the matter had 624 days of discovery, the judge

wrote, "what is going on?" without addressing the facts plaintiff

presented in her certification. On the same day, the judge also

denied a motion, apparently filed by plaintiff's second attorney,

seeking reinstatement of plaintiff's complaint.10 The court noted

the attorney had never filed a substitution of attorney and a

trial date was already set.11

 On June 9, 2015, plaintiff's third and present counsel filed

a formal "substitution of counsel" signed by both counsel and

8
 In a subsequent letter to the court in April 2015, plaintiff
stated that the termination letter was dated March 9, 2015, and
she had filed a fee arbitration to secure the return of her $3000.
9
 Plaintiff chose not to include those medical records in the
record.
10
 The supporting papers are not before us, so it is unclear when
he filed the motion papers or what they said. The proposed form
of order inexplicably referred to a dismissal of plaintiff's
complaint for failure to prosecute, although no such dismissal was
ever ordered.
11
 An April 28 notice set trial for June 29, 2015.

 9 A-5459-14T2
plaintiff. In a series of motions, her new counsel sought orders:

reinstating the complaint, extending the DED, vacating the

preclusion of expert testimony, and adjourning the trial date. He

filed supporting certifications of counsel and plaintiff, which

recounted the facts and procedural history set forth above. In

particular, plaintiff reiterated that she did not consent to her

first attorney's withdrawal and that her attorney did not timely

inform her of discovery deadlines and obligations. She also

described her ill-fated retention of the second attorney, noting

he did not inform her of his suspension.

 On June 26, 2015, the trial court denied all the motions.

Regarding the motion to vacate the dismissal, the court stated:

 This application is denied for a myriad of
 reasons. Plaintiff's attorney is not properly
 in the case. Attorney must file a motion. In
 that motion they must represent that their
 substituting in as new counsel will not cause
 a delay. Also this matter has had 624 days
 of discovery and there is a long list of
 plaintiff's failure[s] to comply with court
 orders regarding her discovery obligations.

In denying the motion to extend discovery, the court added that

plaintiff failed to comply with Rule 4:24-1(c) or to demonstrate

exceptional circumstances why she "consistently violated court

orders[.]" As for the motion to vacate the order suppressing

expert testimony, the court added, "Plaintiff also attempted to

 10 A-5459-14T2
have attorneys who were suspended from the practice of law engage

in motion practice on her behalf."

 On the day that had been set for trial, June 29, 2015, the

court granted defendants' joint motion filed that same day to

dismiss plaintiff's amended complaint with prejudice. In an oral

statement of reasons, the judge noted that plaintiff could not

meet her burden to establish liability without an expert. The

judge also noted potential spoliation of evidence issues because

plaintiff did not preserve the Acura involved in the accident.

 On appeal, plaintiff challenges: the substitution of attorney

in November 2014; the December 2014 order dismissing her complaint

without prejudice; the February and March 2015 orders barring

expert testimony; the June 2015 orders denying her motions to

reinstate her complaint, extend discovery, allow expert testimony,

and adjourn the trial date; and the June 2015 order, issued on the

day of trial, dismissing the complaint with prejudice.

 II.

 Absent an injustice, we shall not disturb a trial court's

reasoned exercise of discretion in managing discovery and its

trial calendar — including decisions whether to extend deadlines,

impose sanctions for discovery violations, and adjourn a trial.

See, e.g., J.D. v. M.D.F., 207 N.J. 458, 480 (2011) ("Our courts

have broad discretion to reject a request for an adjournment that

 11 A-5459-14T2
is ill founded or designed only to create delay . . . ."); Pomerantz

Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011) (appellate

courts apply deferential standard in reviewing trial court

decisions on discovery extensions); Bender v. Adelson, 187 N.J.

411, 428 (2006) (reviewing for an abuse of discretion a "trial

court's decision to bar defendants' requested amendments to their

interrogatory answers [to add experts] and deny a further discovery

extension"); Abtrax Pharms. v. Elkins-Sinn, 139 N.J. 499, 517

(1995) (stating appellate courts shall review dismissal of

complaint with prejudice "for discovery misconduct" under an abuse

of discretion standard and shall not interfere "unless an injustice

appears to have been done"). We are mindful that, without

consistent enforcement of the rules, "the efficacy of our rules

is destroyed by the gradual cumulation of exceptions." Jansson

v. Fairleigh Dickinson Univ., 198 N.J. Super. 190, 196 (App. Div.

1985). However, we are not obliged to defer to discovery orders

that are "based on a mistaken understanding of the applicable

law." Pomerantz Paper Corp., supra, 207 N.J. at 371 (internal

quotation marks and citation omitted).

 An abuse of discretion "arises when a decision is made without

a rational explanation, inexplicably departed from established

policies, or rested on an impermissible basis." Flagg v. Essex

Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (internal quotation

 12 A-5459-14T2
marks and citation omitted). In this case, the dismissal with

prejudice of plaintiff's complaint rests on the foundation of the

multiple orders that preceded it. Those prior orders suffer from

several infirmities that constrain us to reverse.

 In particular, three were entered in violation of the rules

governing motion practice. Fundamental to the motion practice

rules are the principles that the court may enter an order to a

party's prejudice only upon proper notice, based upon competent

evidence, and after a fair opportunity to respond. The court

violated these principles in entering the three orders, in response

to defense counsel's informal letters, that compelled plaintiff

to attend depositions, dismissed her complaint for failing to

appear at such depositions, and barred expert testimony.

 The court also misapplied the rules governing the

substitution and withdrawal of counsel. Specifically, the court

erred in failing to review plaintiff's first counsel's withdrawal

once plaintiff protested that she did so without consent, and in

later concluding that plaintiff's third counsel needed defendants'

consent and leave of court to appear in place of plaintiff pro se.

The trial court then preserved, rather than corrected, these

multiple errors in denying plaintiff's omnibus motion to restore

her complaint, extend discovery, allow her to retain an expert,

and adjourn trial.

 13 A-5459-14T2
 Turning to the first three orders, "[a]n application to the

court for an order shall be by motion," Rule 1:6-2(a) — not

letters, as defense counsel utilized here. Even if we were to

construe the letters as motions, they fail to meet the requirements

governing motion practice in at least three respects. First, a

motion "shall state the time and place when it is to be presented

to the court . . . ." Ibid. Specifically, a movant must provide

the other party with a notice of motion, alerting her to the return

date, which is generally no sooner than sixteen days. See R. 1:6-

3(a); 3 New Jersey Practice, Civil Practice Forms § 10.2, at 330

(James H. Walzer) (6th ed. 2006) ("Every motion shall state the

time and place when it is to be presented to the court . . . .").

Defense counsel provided no such notice, and his letters identified

no return date or other deadline by which plaintiff was obliged

to respond.

 Second, if the motion "relies on facts not of record or not

subject of judicial notice, it shall be supported by affidavit

made in compliance with R. 1:6-6." R. 1:6-2(a). Here, defense

counsel supported his application by his own unsworn assertions

in his letter.

 Third, discovery motions in particular must be accompanied

by the movant's attorney's certification that the attorney made a

good faith attempt to confer orally with the attorney for the

 14 A-5459-14T2
other side, or sent a letter advising the attorney for the

defaulting party that a motion would be filed. Rule 1:6-2(c).

Counsel provided none. Particularly after plaintiff's first

counsel withdrew, defense counsel was obliged to confer orally

with plaintiff or send a warning letter directly to her, yet there

is no evidence that occurred.

 Furthermore, our court rules strictly limit the circumstances

in which a party may secure relief ex parte. "When the rules do

not provide for ex parte applications, they are prohibited, with

the possible exception of extraordinary circumstances which would

warrant a relaxation of the rules pursuant to R. 1:1-2." Scalza

v. Shop Rite Supermarkets, Inc., 304 N.J. Super. 636, 640 (App.

Div. 1997) (noting that "a motion to dismiss a complaint for

failure to abide by a court order requiring more specific answers

to interrogatories is not such an emergent matter"); cf. R. 4:52-

1(a) and R. 4:67-2(a) (permitting ex parte applications for

emergent relief).

 Here, the relief provided in response to the first two letters

was essentially ex parte, as plaintiff had no practical opportunity

to respond. This is particularly obvious in the case of the

deposition order, which the court entered the day after defense

counsel requested it. The order excluding expert testimony,

 15 A-5459-14T2
entered four days after the application, was not much better. No

Rule sanctions the provision of ex parte relief in this context.

 Although a court has the authority in "rare case[s]" to relax

the motion practice rules in cases of significant public interest,

see Enourato v. N.J. Bldg. Auth., 182 N.J. Super. 58, 64-66 (App.

Div. 1981), aff'd 90 N.J. 396 (1982), nothing exceptional about

this case warranted disregarding motion practice rules. Nor did

the court's case management order authorize the procedure here.

 Perhaps most puzzling of all is the fact that the court's

actions were contrary to its own order, which explicitly required

the parties to seek its permission before filing motions. We need

not explore whether the court was justified, absent any record of

harassing or frivolous motion practice, to require leave in advance

to file motions. But see Parish v. Parish, 412 N.J. Super. 39,

58 (App. Div. 2010) (stating that "enjoining the filing of motions

should be considered only following a determination that the

pleadings demonstrate the continuation of vexatious or harassing

misuse of judicial process"). Even assuming the order was

appropriate, it did not grant the parties leave to secure orders

outside the motion practice rules.

 While the court responded to defense counsel's informal

letter applications, it failed to respond at all to plaintiff's

pro se letter protesting the withdrawal of her attorney without

 16 A-5459-14T2
consent. Plaintiff's counsel needed her client's consent, or

leave of court, to withdraw. See R. 1:11-2(a)(1) ("[P]rior to the

fixing of a trial date in a civil action, an attorney may withdraw

upon the client's consent provided a substitution of attorney is

filed naming the substituted attorney or indicating that the client

will appear pro se."). Counsel did not seek leave of court. She

filed a substitution of attorney that conspicuously omitted

plaintiff's signature indicating her consent. In response,

plaintiff asserted in a letter to the court she did not give

consent, and she was unaware of the deposition order.

 We recognize that plaintiff's counsel allegedly disputed her

client's representations in a letter submitted to the court

(although the letter is not before us). Yet, counsel's reported

response at most created a factual dispute that the court was

obliged to resolve. Notably, plaintiff eventually supported her

position with certifications. None by her counsel was submitted

to the court. Thus, the court erred in failing to address the

propriety of plaintiff's first counsel's withdrawal.

 The prejudice plaintiff suffered as a result of this error

is plain. The court's failure to examine counsel's withdrawal and

alleged lack of diligence in representing plaintiff played a

critical role in the orders dismissing plaintiff's complaint

without prejudice and barring an expert. Plaintiff contended to

 17 A-5459-14T2
the court and defense counsel that her attorney failed to inform

her of the December 1 ordered deposition in a timely manner;

withdrew without consent; and left her unprepared to attend her

deposition. If all that were true — and there is no competent

evidence under Rule 1:6-6 to dispute it — plaintiff's failure to

attend was excusable. Nonetheless, the court dismissed her

complaint without prejudice for failure to attend the deposition

without addressing plaintiff's reasons for doing so. The order

barring plaintiff's expert was likewise tainted by the court's

failure to determine whether plaintiff was abandoned and disserved

by her first attorney.

 The court also erred in denying the four motions filed by

plaintiff's third attorney, which would have given plaintiff a

chance to get her case back on track. First, the court misapplied

Rule 1:11-2(a)(2) in ruling that counsel was not permitted to

appear in place of plaintiff pro se. After a civil trial date is

set, "an attorney may withdraw without leave of court only upon"

filing: (1) the "client's written consent[] [and] a substitution

of attorney" signed by both the withdrawing and entering attorneys;

(2) "a written waiver by all other parties of notice and the right

to be heard"; and (3) "a certification by both the withdrawing

attorney and the substituted attorney that the withdrawal and

substitution will not cause or result in delay." Ibid. (emphasis

 18 A-5459-14T2
added). By its plain language, the rule applies to the withdrawal

of an attorney, not a self-represented party.

 Moreover, the Supreme Court has expressly ordered that a

substitution is not required of an attorney taking the place of a

pro se party:

 Pursuant to N.J. Const. Art. VI., sec. 2 par.
 3, it is ORDERED that the provisions of Rule
 1:11-2 ("Withdrawal or Substitution") of the
 Rule Governing the Courts of the State of New
 Jersey are supplemented and relaxed so as to
 require an "attorney retained by a client who
 had appeared pro se" to file a Notice of
 Appearance, rather than a Substitution of
 Attorney.

 [Notice to the Bar from Stuart Rabner, Chief
 Justice, Relaxation of Rule 1:11-2 to Require
 a Notice of Appearance Where an Attorney
 Initially Appears In a Matter (Feb. 20, 2015),
 http://njcourts.gov/notices/2015/n150227f.
 pdf.]

In the accompanying notice to the bar, the Acting Administrative

Director of the Courts explained: "A Substitution of Attorney

pleading should be used only in those situations (1) where an

attorney seeks to withdraw from a matter or (2) where one attorney

is being substituted for another attorney in the matter." Notice

to the Bar from Glenn A. Grant, Acting Administrative Director,

Superior Court of New Jersey, Relaxation of Rule 1:11-2 to Require

a Notice of Appearance Where an Attorney Initially Appears In a

 19 A-5459-14T2
Matter (Feb. 20, 2015), http://njcourts.gov/notices/2015/

n150227f.pdf.

 The court also erred in concluding that plaintiff "attempted

to have attorneys who were suspended from the practice of law

engage in motion practice on her behalf." The court's reasoning

presumed, without any evidential support, that plaintiff was aware

of her second attorney's suspension. To the contrary, the

plaintiff certified, without dispute, that she was unaware of the

suspension and was victimized by that attorney's lack of diligence.

Further, the court faulted plaintiff alone for the fact that

discovery was incomplete, despite plaintiff's certification that

she was disserved by her first and second attorneys, that the

first withdrew without consent, and the second was suspended.

 In its discretion, the trial court may for "good cause" grant

a motion to extend discovery. R. 4:24-1. Extensions should not

be mechanically denied if neither an arbitration nor trial date

has been set. See Ponden v. Ponden, 374 N.J. Super. 1, 9-11 (App.

Div. 2004), certif. denied, 183 N.J. 212 (2005). After the

arbitration or trial date has been set a movant must demonstrate

"exceptional circumstances," R. 4:24-1, in other words, "something

unusual or remarkable." Rivers v. LSC P'ship, 378 N.J. Super. 68,

78 (App. Div.) (internal quotation marks and citation omitted),

certif. denied, 185 N.J. 296 (2005). A movant must demonstrate:

 20 A-5459-14T2
 (1) why discovery has not been completed
 within time and counsel's diligence in
 pursuing discovery during that time; (2) the
 additional discovery or disclosure sought is
 essential; (3) an explanation for counsel's
 failure to request an extension of the time
 for discovery within the original time period;
 and (4) the circumstances presented were
 clearly beyond the control of the attorney and
 litigant seeking the extension of time.

 [Id. at 79.]

 Plaintiff effectively requested an extension of discovery in

March, before the DED and before the trial date was set, by

requesting that the case be placed on the inactive list because

of her impending surgery. Although plaintiff does not appeal the

order denying that motion, we note that the court failed to address

the reasons plaintiff presented, including her assertions that:

her attorneys disserved her, the first withdrew without consent,

and the second was suspended.

 In any event, we are satisfied that plaintiff presented

exceptional circumstances to justify an extension of discovery

and, perforce, an adjournment of trial. We recognize an attorney's

mismanagement or neglect may fall short of establishing

exceptional circumstances. See Huszar v. Greate Bay Hotel &

Casino, Inc., 375 N.J. Super. 463, 474 (App. Div.) (finding no

exceptional circumstances where "the delay rests squarely on

plaintiff's counsel's failure to retain an expert and pursue

 21 A-5459-14T2
discovery in a timely manner"), certif. granted and summarily

remanded, 185 N.J. 290 (2005); Martinelli v. Farm-Rite, Inc., 345

N.J. Super. 306, 311-12 (App. Div. 2001), certif. denied, 171 N.J.

338 (2002); Rodriguez v. Luciano, 277 N.J. Super. 109, 112-13

(App. Div. 1994).

 However, we have more here. Accepting plaintiff's

certifications as true — as they are undisputed by any competent

evidence in the form of a certification of her prior counsel to

the contrary — she was disserved and then abandoned by her first

attorney. When she sought the court's intervention, none was

forthcoming. She diligently sought and retained new counsel, paid

a fee, and anticipated that he would soon correct any deficiencies

in discovery. Instead, the attorney did not formally substitute

in; he apparently did little on plaintiff's behalf; and he was

suspended from the practice of law and thereby disabled from

representing her even if he intended to do so.

 Under these circumstances, it would defeat the ends of justice

to require plaintiff to suffer the consequences of her attorneys'

actions. Cf. Kosmowski v. Atl. City Med. Ctr., 175 N.J. 568, 574

(2003) (stating, regarding whether to adjourn a case due to an

expert's unavailability, the court must consider both "the

salutary principle that the sins of the advocate should not be

visited on the blameless litigant," and the court's case

 22 A-5459-14T2
management prerogatives (internal quotation marks and citation

omitted)); Parker v. Marcus, 281 N.J. Super. 589, 592-95 (App.

Div. 1995) (in context of Rule 4:50-1(f) motion, finding

exceptional circumstances that warranted relieving party of

consequences of negligent conduct of case by attorney later

disbarred), certif. denied, 143 N.J. 324 (1996).

 Given the foregoing conclusions, we need say little about the

day-of-trial order dismissing plaintiff's complaint with

prejudice. The trial judge newly assigned the case was bound by

the prior orders. It was readily apparent to him, focusing on the

current posture of the case, that plaintiff could not proceed to

present a prima facie case, even if her complaint were restored,

because she had not obtained an expert. Moreover, the trial court

had previously denied her motion to extend discovery; as a result,

she could not cure that deficiency. In other words, the court's

order was foreordained by the preceding orders. As we reverse

those orders, we reverse as well the order dismissing the complaint

with prejudice as to Honda.12 However, for the reasons set forth

below, we affirm the dismissal of the complaint against DCH.

12
 We decline to affirm the dismissal order on the independent
ground that plaintiff did not preserve the vehicle. Plaintiff has
yet to present the report of an expert describing the nature of
the alleged defect in the air bag system. Therefore, it is
premature to determine the prejudice resulting from the failure

 23 A-5459-14T2
 III.

 In November 2013, over three years after the accident,

plaintiff filed an amended complaint identifying DCH for the first

time. The trial court erred in denying DCH's motion to dismiss

the complaint on the ground plaintiff failed to satisfy the

applicable two-year statute of limitations. See N.J.S.A. 2A:14-

2. In particular, the court erred in applying Rule 4:26-4, which

permits a plaintiff to sue a fictitiously named party, later amend

a complaint to substitute the party's true name, and have the

amended complaint "relate back" for statute of limitations

purposes to the filing of the original complaint. See Greczyn v.

Colgate-Palmolive, 183 N.J. 5, 17 n.3 (2005) ("Fictitious-party

practice renders the initial filing against the identified but

unnamed defendant timely in the first instance, subject only to

diligent action by the plaintiff to insert defendant's real

name."); Claypotch v. Heller, Inc., 360 N.J. Super. 472, 480 (App.

Div. 2003) (stating that the amended complaint substituting the

real name of a fictitiously named party is said to "relate back"

to the date the complaint was originally filed).

 Rule 4:26-4 provides, in relevant part:

to preserve the vehicle. Cf. Tartaglia v. UBS PaineWebber, Inc.,
197 N.J. 81, 118 (2008) (noting that a spoliation claim requires
a showing that "the evidence was material to the litigation"
(internal quotation marks and citation omitted)).

 24 A-5459-14T2
 In any action, . . . if the defendant's true
 name is unknown to the plaintiff, process may
 issue against the defendant under a fictitious
 name, stating it to be fictitious and adding
 an appropriate description sufficient for
 identification. Plaintiff shall on motion,
 prior to judgment, amend the complaint to
 state defendant's true name, such motion to
 be accompanied by an affidavit stating the
 manner in which that information was obtained.

The purpose of the rule is "to protect a diligent plaintiff who

is aware of a cause of action against a defendant but not the

defendant's name, at the point at which the statute of limitations

is about to run." Greczyn, supra, 183 N.J. at 17-18. Upon

learning the real name of a defendant, the diligent plaintiff may

seek permission to file an amended complaint, specifically

identifying the defendant who was previously named fictitiously.

R. 4:26-4.

 A plaintiff invoking fictitious party practice must satisfy

four requirements. First, the plaintiff must not know the identity

of the fictitiously named defendant. R. 4:26-4. Second, the

fictitiously named defendant must be described with sufficient

detail to allow identification. Ibid. Third, a party seeking to

amend a complaint to identify a defendant previously named

fictitiously must provide proof of how it learned the defendant's

identity. Ibid.

 25 A-5459-14T2
 Fourth, although not expressly stated in the rule, the party

invoking the rule must act diligently in attempting to identify

the defendant. Matynska v. Fried, 175 N.J. 51, 53 (2002);

Claypotch, supra, 360 N.J. Super. at 479-80; Mears v. Sandoz

Pharms., Inc., 300 N.J. Super. 622, 629 (App. Div. 1997). A

showing of diligence is a threshold requirement for resort to

fictitious party practice. See Matynska, supra, 175 N.J. at 53

(referring to the "due diligence threshold"); Claypotch, supra,

360 N.J. Super. at 479-80 (stating that defendant may use

fictitious name "only if a defendant's true name cannot be

ascertained by the exercise of due diligence prior to filing the

complaint" (emphasis added)).

 If a plaintiff did not use diligence, and a
 court still permitted him or her to amend his
 or her original complaint to name a previously
 unknown defendant, it would not only fail to
 penalize delay on the plaintiff['s] part, but
 would also disregard considerations of
 essential fairness to [the] defendant[],
 thereby violating the purpose behind the
 statute of limitations.

 [Mears, supra, 300 N.J. Super. at 630
 (internal quotation marks and citation
 omitted).]

 We recognize that the court in Claypotch held that "[i]n

determining whether a plaintiff has acted with due diligence . . .

a crucial factor is whether the defendant has been prejudiced by

the delay . . . ." Claypotch, supra, 360 N.J. Super. at 480.

 26 A-5459-14T2
However, the absence of prejudice to defendant does not necessarily

imply that plaintiff has exercised due diligence.13 Instead, where

the Court has found that a party had acted diligently, the Court

considered the absence of prejudice to the defendant as a factor

supporting its conclusion that allowing an amendment served the

interests of justice and fairness. Farrell v. Votator Div. of

Chemetron Corp., 62 N.J. 111, 122-23 (1973). However, "[t]here

cannot be any doubt that a defendant suffers some prejudice merely

by the fact that it is exposed to potential liability for a lawsuit

after the statute of limitations has run." Mears, supra, 300 N.J.

Super. at 631.

 Applying the aforementioned requirements to the present

matter, it is clear plaintiff failed to meet her burden. First,

she presumably knew the name of the car dealer that leased her

Acura. If she did not know its precise corporate name, she could

have referred to her lease or simply asked someone at the

dealership. The rule is unavailable to a plaintiff who could have

13
 While it is true that greater diligence by a plaintiff will
generally result in lesser prejudice to defendant (because there
will be correspondingly less delay in substituting the defendant
for a fictitious party), the converse is not necessarily true.
Lesser prejudice to defendant does not necessarily imply greater
diligence by plaintiff. Asserting that it does is an example of
"affirming the consequent" or "converse error." Prejudice may be
a function of lack of diligence, but diligence is not a function
of lack of prejudice.

 27 A-5459-14T2
easily identified a defendant before filing the complaint.

Claypotch, supra, 360 N.J. Super. at 479-80; Mears, supra, 300

N.J. Super. at 629.

 Second, she failed to describe any of the fictitious parties

with sufficient detail to indicate she sought to hold the dealer

liable. Certainly, she failed to allege any wrongdoing by the

unnamed lessor of the vehicle instead. Instead, she described the

"ABC Corporations 1-10" as follows:

 Fictitious entities who, as wholly or
 partially owned subsidiaries, or in
 partnership or combination with or under the
 control of the named defendant, acted
 purposely, intentionally, fraudulently and
 negligently with regard to certain duties owed
 to the plaintiff and in acting purposely,
 intentionally, fraudulently and negligently
 caused the plaintiff to suffer damages as are
 set forth herein.

 The remaining factors are plainly inapplicable here:

plaintiff did not provide any proof as to how she learned the

dealer's identity, nor did she demonstrate that she acted

diligently in identifying and naming the fictitious party.

 Consequently, plaintiff was not entitled to rely on

fictitious party practice to name DCH after the limitations period

had run. Therefore, the court should have dismissed the complaint

against DCH as time-barred. On that basis, we affirm the court's

later order dismissing the complaint against DCH. See State v.

 28 A-5459-14T2
Heisler, 422 N.J. Super. 399, 416 (App. Div. 2011) (stating the

appellate court may "affirm the trial court's decision on grounds

different from those relied upon by the trial court").

 Affirmed in part and reversed in part. We do not retain

jurisdiction.

 29 A-5459-14T2