**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2648-19

RAMONA L. MCBRIDE,

     Plaintiff-Appellant,

v.

FOULKE MANAGEMENT,
CORP., d/b/a ATLANTIC
JEEP CHRYSLER FIAT,

     Defendant-Respondent.

_____

Submitted February 10, 2021 – Decided May 18, 2021

Before Judges Accurso, Vernoia, and Enright.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-2633-17.

Swartz Swidler, LLC, attorneys for appellant (Daniel A. Horowitz, on the briefs).

Capehart & Scatchard, PA, attorneys for respondent (Laura D. Ruccolo, on the brief).

PER CURIAM

In Aguas v. State, our Supreme Court held that an employer has an affirmative defense to a claim it is vicariously liable for a supervisor's hostile environment sexual discrimination under the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -50. 220 N.J. 494, 521-24 (2015). The Court determined an employer is not vicariously liable for the discriminatory actions of a supervisor where the employee is not subject to a tangible employment action and the employer proves by a preponderance of the evidence "that [it] exercised reasonable care to prevent and to correct promptly sexually harassing behavior" and "the plaintiff employee unreasonably failed to take advantage of preventive or corrective opportunities provided by the employer or to otherwise avoid harm." Id. at 524.

Following three weeks of employment as a sales trainee at a car dealership owned by defendant Foulke Management Corp., d/b/a Atlantic Jeep Chrysler Fiat, plaintiff Ramona L. McBride filed a complaint alleging her supervisor, sales manager Jack Dellafave, made unwanted sexual advances, and, when she rebuffed the advances, Dellafave terminated her employment. In her complaint, plaintiff asserted causes of action under the LAD for hostile environment sexual

discrimination and retaliation, and she claimed defendant is vicariously liable for Dellafave's alleged actions.[1]

Following discovery, defendant moved for summary judgment. In support of its motion, defendant made a focused, precise, and limited argument. It claimed it is not vicariously liable because the undisputed facts established defendant is entitled to judgment as a matter of law under the affirmative defense adopted by the Court in Aguas. Defendant argued plaintiff was not subject to a tangible employment action and she failed to promptly report Dellafave's alleged

---

[1] In Aguas, the Court explained an employer may be liable for a supervisor's sexual harassment of an employee based on either "a direct cause of action . . . for negligence or recklessness under [Restatement (Second) of Agency] § 219(2)(b) [(Am. Law Inst. 1958)]" or "a claim for vicarious liability under Restatement § 219(2)(d)." 220 N.J. at 512. Plaintiff's complaint does not expressly allege defendant is vicariously liable for Dellafave's alleged discriminatory and retaliatory actions. We interpret the complaint to aver defendant is vicariously liable for Dellafave's actions because the complaint details Dellafave's alleged actions and asserts defendant is liable for them. Moreover, plaintiff conceded at oral argument before the motion court, and argues on appeal, her claims against defendant are based on its alleged vicarious liability for Dellafave's actions. The complaint does not claim defendant's negligence or recklessness resulted in Dellafave's alleged discriminatory and retaliatory conduct, and plaintiff does not argue on appeal the complaint should be interpreted to assert either a negligence or recklessness claim under Restatement § 219(2)(b). We therefore limit our analysis to plaintiff's claim defendant is vicariously liable for Dellafave's alleged actions under Restatement § 219(2)(d).

A-2648-19

actions in accordance with defendant's anti-harassment and anti-discrimination policy. The motion court agreed and granted defendant summary judgment.

On appeal, plaintiff claims the court erred by finding the Aguas affirmative defense barred her claim. She contends the undisputed facts establish she was subject to a tangible employment action—the termination of her employment and a loss of compensation—or, in the alternative, there is a fact issue as to whether she suffered a tangible employment action. Having reviewed the summary judgment record, we are convinced there is a genuine issue of material fact as to whether plaintiff was subject to a tangible employment action. As a result, the record does not permit a finding defendant is entitled to judgment as a matter of law based on the affirmative defense adopted in Aguas. We therefore reverse and remand for further proceedings.

"We review de novo the trial court's grant of summary judgment, applying the same standard as the trial court." Abboud v. Nat'l Union Fire Ins., 450 N.J. Super. 400, 406 (App. Div. 2017). This standard mandates the grant of summary judgment "if the pleadings, depositions, answers to interrogatories[,] and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c).

4

In our review of a summary judgment record, we limit our determination of the undisputed facts to those properly presented in accordance with Rule 4:46-2.  Under the Rule:

> [A] party moving for summary judgment is required to submit a "statement of material facts" . . . "set[ting] forth in separately numbered paragraphs a concise statement of each material fact as to which the movant contends there is no genuine issue together with a citation to the portion of the motion record establishing the fact or demonstrating that it is uncontroverted."
>
> [Claypotch v. Heller, Inc., 360 N.J. Super. 472, 488 (App. Div. 2003) (quoting R. 4:46-2(a)).]

"[A] party opposing a motion for summary judgment [must] 'file a responding statement either admitting or disputing each of the facts in the movant's statement.'"  Ibid. (quoting R. 4:46-2(b)).  "[A]ll material facts in the movant's statement which are sufficiently supported will be deemed admitted for purposes of the motion only, unless specifically disputed by citation conforming to the requirements of paragraph (a) demonstrating the existence of a genuine issue as to the fact."  R. 4:46-2(b).

These requirements for the filing of statements of material facts under Rule 4:46-2 are "critical" and "entail[] a relatively undemanding burden."  Housel v. Theodoridis, 314 N.J. Super. 597, 604 (App. Div. 1998).  They were "designed to 'focus [a court's] . . . attention on the areas of actual dispute' and

5

[to] 'facilitate the court's review' of the motion." Claypotch, 360 N.J. Super. at 488 (second alteration in original) (quoting Pressler & Verniero, Current N.J. Court Rules, cmt. 1.1 on R. 4:46-2 (2003)). As such, a trial court must decide a motion for summary judgment based only upon the "factual assertions . . . that were . . . properly included in the motion [for] and [in opposition to] . . . summary judgment" pursuant to Rule 4:46-2. Kenney v. Meadowview Nursing & Convalescent Ctr., 308 N.J. Super. 565, 573 (App. Div. 1998); see also Lombardi v. Masso, 207 N.J. 517, 549 (2011) (Rivera-Soto, J., dissenting) (stating a trial court must decide a summary judgment motion "[b]ased on the [Rule]-defined, specifically tailored summary judgment record before it"). Likewise, we will only consider "those [properly included] factual assertions" on appeal. Kenney, 308 N.J. Super. at 573; see also Lombardi, 207 N.J. at 549 (Rivera-Soto, J., dissenting) ("That limitation—that a summary judgment determination is defined and limited by the summary judgment record—also applies on appeal."). Therefore, in our review of the court's summary judgment order, we limit our inquiry to, and rely solely on, the undisputed facts established by the parties' Rule 4:46-2 statements.[2] Kenney, 308 N.J. Super. at 573.

---

[2] In its opinion on the summary judgment motion, the court incorrectly made findings of fact based on its review of documents, including deposition

The parties' Rule 4:46-2 statements established that plaintiff began her employment with defendant as a sales trainee on March 6, 2017. Michael McErlean was defendant's general manager during plaintiff's short-lived employment. At the time of the actions plaintiff claims violated the LAD, defendant had an anti-harassment and anti-discrimination policy it provided to employees, including plaintiff. The employees, including plaintiff, were also tested on the policy. In pertinent part, the policy provided that if an employee felt he or she was being sexually harassed, the employee was to contact Robert Armstrong, who was defendant's Director of Security and Internal Investigations and was responsible for investigating harassment complaints. "When . . . Armstrong receives a complaint of sexual harassment, he interviews the victim and then determines how to proceed in his investigation."

---

transcripts, that were appended to the motion papers, but the purported facts found by the court were not included in the parties' Rule 4:46-2 statements. Similarly, on appeal, the parties make factual assertions supported by citations to documents and transcripts, but the alleged facts were not presented to the motion court in the parties' respective Rule 4:46-2 statements. It is not the role of the motion court or this court to sift through documents and transcripts annexed to summary judgment motion papers and make findings of fact based on a review of what is provided. Rule 4:46-2 provides the prescribed method for presenting the proposed facts supporting, and opposing, a summary judgment motion. As noted, we limit the facts we consider in our de novo review of the record to those presented in the parties' Rule 4:46-2 statements.

Salespeople, including sales trainees like plaintiff, reported directly to sales managers. At the start of plaintiff's employment, she was advised she reported to two sales managers, one of whom was Dellafave. Although defendant denies "[s]ales [m]anagers assigned tasks to the [s]alespeople, inclusive of trainees," it is undisputed that for at least the first week of plaintiff's employment, the sales managers "started [the sales trainees] off by making phone calls to customers . . . that already purchased from [defendant], and then the[] [managers] would let [the trainees] walk around and get familiar with . . . the cars and stuff like that."

Shortly after plaintiff began working for defendant, Dellafave sent her text messages stating he was "attracted" to her, inviting her to his hotel room, and offering to pay for her cab ride to his hotel. Plaintiff declined Dellafave's proposals. While at work on March 30, 2017, Dellafave asked plaintiff "'why [she had not] been taking him up on his offers [to] come hang out with him privately,' which [plaintiff] understood to mean hang out privately with him and have sex." Plaintiff again declined Dellafave's entreaty.

"In response to [plaintiff's rejection] of his sexual advances, . . . Dellafave told [p]laintiff . . . to clock out, and 'leave and don't come back.'" Plaintiff testified Dellafave "did not say [she was] fired, he just said clock out and leave."

A-2648-19

In response to Dellafave's statement, plaintiff clocked out and left the workplace. Plaintiff contacted McErlean that same day to complain about Dellafave's treatment. Plaintiff "told [McErlean] exactly what happened" and "what [Dellafave] was doing."

McErlean in turn contacted Armstrong to inform him of plaintiff's complaints. The next day, March 31, plaintiff met with Armstrong and McErlean at the car dealership. Armstrong testified that at this meeting, plaintiff "felt that [Dellafave] dismissed her, fired her." However, McErlean informed plaintiff that "even though [Dellafave] sent her home, she was not fired, she was still employed."

Armstrong requested that plaintiff produce the text messages from Dellafave. Armstrong intended to pick the text messages up from plaintiff the next day, but plaintiff did not appear for work. Plaintiff did not return to the dealership until April 10, at which point she first provided the text messages and submitted a written complaint to Armstrong. She did not return until April 10 because she "didn't know what to do and . . . [was] confused and so forth." After reviewing the text messages, Armstrong believed Dellafave sexually harassed plaintiff, and Dellafave's employment was terminated that same day.

After Dellafave's termination, defendant "told [plaintiff her] job is here, [she was] never fired," and that she "could stay if [she] want[ed] to." However, plaintiff "chose not to" return to work for defendant.

Prior to the March 30, 2017 incident, defendant paid plaintiff $400 in weekly salary. However, her paystub for that week showed compensation of $262. Plaintiff was not compensated for any time after she clocked out on March 30.

Based on that record, as well as the court's consideration of purported facts not included in the parties' Rule 4:46-2 statements, the court rendered an opinion from the bench. The court found Dellafave was plaintiff's supervisor and that he sexually harassed her. The court also noted that, for purposes of its motion, defendant conceded plaintiff could establish a prima facie case of hostile environment sex discrimination by her supervisor, Dellafave, and that the issue presented was whether the undisputed facts allowed judgment in defendant's favor based on the affirmative defense adopted by the Court in Aguas. The court concluded, based in part on facts asserted by defendant outside of the Rule 4:46-2 statements, that: Dellafave did not have authority to fire plaintiff; plaintiff was not fired; and no tangible employment action was taken against her.

The court found plaintiff's hostile environment sex discrimination and retaliation claims under the LAD were barred as a matter of law by the affirmative defense adopted in Aguas because plaintiff "failed to take advantage of the preventative or corrective opportunit[ies]" presented by defendant's anti-harassment policy; she did not follow defendant's reporting procedure or cooperate with the investigation; and she "voluntarily separated herself from employment." See 220 N.J. at 523-24. The court further found the undisputed facts established plaintiff did not suffer a tangible employment action because Dellafave did not have the actual or apparent authority to terminate plaintiff's employment, and his statement directing plaintiff to "clock out, leave, [and] don't come back," did not "convey . . . plaintiff was fired or otherwise . . . terminated or separated from her employment." Relying on the Court's decision in Aguas, the motion court found defendant was entitled to judgment as a matter of law, and entered an order granting defendant summary judgment on each of plaintiff's claims.

"Discrimination based on gender is 'peculiarly repugnant in a society which prides itself on judging each individual by his or her merits.'" Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 600 (1993) (quoting Grigoletti v. Ortho

Pharm. Corp., 118 N.J. 89, 96 (1990)). "The LAD specifically prohibits employment discrimination based on sex," ibid., providing:

> It shall be [an] unlawful employment practice, or, as the case may be, an unlawful discrimination:
>
> a. For an employer, because of the race, creed, color, national origin, ancestry, age, marital status, affectional or sexual orientation, [or] sex . . . of any individual, . . . to refuse to hire or employ or to bar or to discharge . . . from employment such individual or to discriminate against such individual in compensation or in terms, conditions[,] or privileges of employment . . . .
>
> [Ibid. (third, fourth, fifth, and seventh alterations in original) (quoting N.J.S.A. 10:5-12).]

"Sexual harassment is a form of sex discrimination that violates . . . the LAD." Id. at 601.

"[A]n employer may be . . . liable, in accordance with principles of agency law, for sexual harassment committed by a supervisor that results in a hostile work environment." Aguas, 220 N.J. at 498 (citing Lehmann, 132 N.J. at 592). Proper analysis of a claim against an employer for sexual harassment committed by a supervisor is dependent on whether the plaintiff asserts "a direct cause of action against the employer for negligence or recklessness under [Restatement (Second) of Agency] § 219(2)(b) [(Am. Law Inst. 1958)]," or "a claim for vicarious liability under Restatement § 219(2)(d)." Id. at 512. Where,

12

as here, a vicarious liability claim is asserted, the factfinder is required to engage in a "detailed fact-specific analysis," and answer each of the following four questions:

> 1. Did the employer delegate the authority to the supervisor to control the situation of which the plaintiff complains . . . ?
>
> 2. Did the supervisor exercise that authority?
>
> 3. Did the exercise of authority result in a violation of [the LAD]?
>
> 4. Did the authority delegated by the employer to the supervisor aid the supervisor in injuring the plaintiff?
>
> [Id. at 514 (alterations in original) (quoting Lehmann, 132 N.J. at 620).]

"If each of these questions are answered in the affirmative, 'then the employer is vicariously liable for the supervisor's harassment under [Restatement] § 219(2)(d).'" Ibid. (alteration in original) (quoting Lehmann, 132 N.J. at 620). "[A]n allegedly harassing employee is the complainant's supervisor if that employee had the authority to take or recommend tangible employment actions affecting the complaining employee, or to direct the complainant's day-to-day activities in the workplace." Id. at 500.

Affirmative responses to the four questions do not end the inquiry. As noted, in Aguas, 220 N.J. at 523-24, the Court adopted the affirmative defense

A-2648-19

to an employer's vicarious liability for a supervisor's sexual harassment articulated by the United States Supreme Court in <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742, 765 (1998), and <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 807-08 (1998).  Our Supreme Court explained:

> In a hostile work environment sexual harassment case under the LAD in which the plaintiff alleges employer vicarious liability under <u>Restatement</u> § 219(2)(d), the plaintiff has the initial burden of presenting a prima facie hostile work environment claim.  <u>If no tangible employment action has been taken against the plaintiff</u>, the defendant employer may assert the two-pronged affirmative defense of <u>Ellerth</u> and <u>Faragher</u>.  To establish that defense, the defendant employer has the burden to prove, by a preponderance of the evidence . . . : first, that the employer exercised reasonable care to prevent and to correct promptly sexually harassing behavior; and second, that the plaintiff employee unreasonably failed to take advantage of preventive or corrective opportunities provided by the employer or to otherwise avoid harm.
>
> [<u>Aguas</u>, 220 N.J. at 524 (emphasis added) (first citing <u>Faragher</u>, 524 U.S. at 807; and then citing <u>Ellerth</u>, 524 U.S. at 746).]

"The . . . affirmative defense derives from agency principles" and "furthers the LAD's purpose of eliminating sexual harassment in the workplace by motivating employers to maintain effective anti-harassment policies, and by encouraging employees to take prompt action against harassing supervisors in accordance with those policies." <u>Id.</u> at 500.

14

The reason "the . . . affirmative defense may not be asserted 'when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion[,] or undesirable reassignment,'" id. at 522 (first quoting Faragher, 524 U.S. at 808; and then quoting Ellerth, 524 U.S. at 765), is "because '[w]hen a supervisor makes a tangible employment decision, there is assurance the injury could not have been inflicted absent the agency relation . . . . Tangible employment actions are the means by which the supervisor brings the official power of the enterprise to bear on subordinates,'" ibid. (alterations in original) (quoting Ellerth, 524 U.S. at 761-62); see also Ellerth, 524 U.S. at 762 ("A tangible employment action in most cases inflicts direct economic harm. As a general proposition, only a supervisor, or other person acting with the authority of the company, can cause this sort of injury."). "[O]ne co-worker . . . cannot dock another's pay, nor can one co-worker demote another. Tangible employment actions fall within the special province of the supervisor. The supervisor has been empowered by the company as a distinct class of agent to make economic decisions affecting other employees under his or her control." Ellerth, 524 U.S. at 762.

Here, defendant's summary judgment motion was based solely on the contention that it was entitled to judgment as a matter of law because the

undisputed facts established the affirmative defense adopted by the Court in Aguas.[3] As the court recognized, for purposes of the summary judgment motion, defendant did not dispute Dellafave was plaintiff's supervisor or that plaintiff "established a prima facie [hostile] work environment claim." And, the limited facts presented in the parties' Rule 4:46-2 statements do not otherwise permit a determination as to whether defendant is vicariously liable for Dellafave's sexual harassment based on the four questions that must be answered to determine such liability under Restatement § 219(2)(d). See Aguas, 220 N.J. at 514.

Defendant's statement of material facts supporting its summary judgment motion is directed solely to the existence of defendant's anti-harassment and anti-discrimination policy, plaintiff's alleged failure to comply with it, and the purported lack of a tangible employment action that are pertinent to the affirmative defense adopted in Aguas. Because defendant did not claim in its summary judgment motion that plaintiff could not establish a prima facie case of vicarious liability against defendant under Restatement § 219(2)(d), see Aguas, 220 N.J. at 514, and, in fact, defendant conceded plaintiff could establish

---

[3]  In response to plaintiff's counterstatement of material facts submitted in opposition to defendant's statement of material facts supporting its motion, defendant repeatedly asserts that its summary judgment motion is "directed to the issue of its affirmative defense under Aguas."

a prima facie case for purposes of the motion, our de novo review of the record focuses solely on the narrow issue of whether the undisputed material facts properly presented to the motion court establish the affirmative defense adopted in Aguas.

The affirmative defense does not apply where an employee is subject to a tangible employment action. See id. at 524. We therefore first consider whether the undisputed facts establish plaintiff was not subject to a tangible employment action. Plaintiff argues that the facts, when viewed in a light most favorable to her as the non-moving party, see Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995), establish Dellafave terminated her employment and, in addition, she suffered a loss of pay as a result of Dellafave's actions. More particularly, she asserts Dellafave's statement, made in response to her rejection of his sexual advances, that she "clock out, and 'leave and don't come back,'" constituted a tangible employment action—the termination of her employment and a resulting loss of pay. In the alternative, she argues there is a genuine issue of material fact as to whether the statement constituted the termination of her employment and resulted in a loss of pay.

In analyzing claims under the LAD, we consider federal precedent "'a key source of interpretive authority,' unless 'that law sharply diverges from prior

authority construing the LAD [or does not] further[] the objectives of the LAD [or] comport[] with our prior holdings.'" Crisitello v. St. Theresa Sch., 465 N.J. Super. 223, 228 n.2 (App. Div. 2020) (alterations in original) (quoting Aguas, 220 N.J. at 510 n.4); see also Turner v. Wong, 363 N.J. Super. 186, 210 (App. Div. 2003) (finding "[i]n interpreting the LAD, the federal law has consistently been considered for guidance" (citing Borngesser v. Jersey Shore Med. Ctr., 340 N.J. Super. 369, 380 (App. Div. 2001))); Chisolm v. Manimon, 97 F. Supp. 2d 615, 621 (D.N.J. 2000) (stating "[t]he New Jersey courts generally interpret the LAD by reliance upon federal court decisions construing the analogous federal antidiscrimination statutes").

We have found, in accordance with federal decisions, that "tangible employment action[s] constitute[] a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Entrot v. BASF Corp., 359 N.J. Super. 162, 188 (App. Div. 2003) (quoting Ellerth, 524 U.S. at 761); see also Howington v. Quality Rest. Concepts, LLC, 298 F. App'x 436, 442 (6th Cir. 2008) ("While de minimis employment actions and 'very temporary' actions are not materially adverse[,] . . . those involving changes such as a termination or a suspension constitute adverse employment

18

actions." (quoting Bowman v. Shawnee State Univ., 220 F.3d 456, 462 (6th Cir. 2000))). Federal courts have also "recognized that a 'loss of pay or benefits' can constitute a tangible job detriment." Howington, 298 F. App'x at 442; see also Ellerth, 524 U.S. at 762 ("A tangible employment action in most cases inflicts direct economic harm."); Thornton v. Fed. Express Corp., 530 F.3d 451, 454-55 (6th Cir. 2008) (finding the plaintiff did not "suffer[] a tangible job detriment" because the action taken by the defendant employer "did not entail an increase in responsibilities or a demotion or loss of pay or benefits").

For example, in Howington, the Sixth Circuit Court of Appeals found "[t]he record in [the] case [was] unclear as to whether [the p]laintiff lost any of her hourly wages when [her supervisor] sent her home from work." 298 F. App'x at 442. However, the court noted the plaintiff "also earned wages through tips as a day-shift bartender"; that, "[a]s a result, [the p]laintiff undoubtedly lost compensation in the form of unearned tips for the days she was not at work after [her supervisor] sent her home"; and that, therefore, "a reasonable jury could find that [the p]laintiff" suffered a tangible employment action. Ibid.

Here, defendant argues on appeal that Dellafave did not have the authority to fire plaintiff, but this assertion finds no support in the undisputed facts presented by defendant in its Rule 4:46-2 submissions. It is improper for

defendant to urge on appeal another basis for summary judgment – that Dellafave did not have the authority to fire plaintiff – based on allegedly undisputed facts it did not include in its Rule 4:46-2 statement. Moreover, facts related to Dellafave's authority are pertinent to the four questions that must be answered to determine if an employer is vicariously liable for a supervisor's harassment under Restatement § 219(2)(d). See Aguas, 220 N.J. at 514. Defendant did not include statements of material fact related to Dellafave's authority in its Rule 4:46-2 submissions, and, as noted, defendant's motion for summary judgment was not based on a claim plaintiff could not establish a prima facie case of vicarious liability under Restatement § 219(2)(d). Defendant argued it was entitled to summary judgment based only on the affirmative defense adopted in Aguas. In addition, and as we have explained, defendant stipulated Dellafave was plaintiff's supervisor for purposes of analyzing whether the Aguas affirmative defense bars plaintiff's claims as a matter of law. See Aguas, 220 N.J. at 500.

In our view, the facts alleged by plaintiff, when viewed in the light most favorable to her, create a genuine issue of material fact as to whether Dellafave terminated plaintiff's employment and whether plaintiff suffered economic damages—a loss in pay—as a result of Dellafave's actions. In the first instance,

we disagree with the motion court that Dellafave's statement could not be understood as constituting the termination of plaintiff's employment. It is not disputed that Dellafave was plaintiff's supervisor, and he instructed her to clock out, leave, and "don't come back." An employer does not have to use the words "fired" or "terminated" to communicate the end of an individual's employment. Telling an employee to clock out, leave the premises, and "don't come back" sufficiently communicates the same dire message. In any event, Dellafave's statement, at a minimum, raises a genuine issue of material fact as to whether plaintiff's employment was actually terminated by him at that time. The undisputed facts establish that, in response to Dellafave's statement, plaintiff clocked out and left the dealership.

We appreciate the undisputed facts also establish that, on the same day, plaintiff reported Dellafave's actions to McErlean, and, on the following day, plaintiff met with McErlean and Armstrong. During the meeting, McErlean informed plaintiff she was not fired and "was still employed." Plaintiff did not return to work following Dellafave's directive and her meeting with McErlean and Armstrong. She went to the dealership ten days later only to provide the harassing messages Dellafave sent to her, and defendant immediately terminated Dellafave's employment.

21

Defendant argues those facts establish plaintiff was neither fired nor did she suffer any loss in pay as a result of Dellafave's actions, and that plaintiff chose not to continue her employment at the dealership. We are not persuaded those facts are dispositive of plaintiff's contention she suffered a tangible employment action. Again, defendant conceded Dellafave was plaintiff's supervisor. Dellafave directed plaintiff to "clock out," meaning he required that plaintiff leave the dealership prior to the time she would have otherwise left work that day. In addition, plaintiff did not receive her standard weekly paycheck of $400 after she clocked out early in accordance with Dellafave's directive; instead she received only $262. It can be reasonably inferred plaintiff did not receive compensation for the time after she clocked out even if McErlean attempted to rescind Dellafave's alleged termination of plaintiff's employment the following day by telling her she was not "fired" and could continue to work. The facts also permitted the reasonable inference in plaintiff's favor that she suffered a loss of income for the period following her early clock-out based on Dellafave's directive and prior to McErlean's statement purporting to rescind the alleged termination.

We determine only that the summary judgment record does not support the motion court's determinations plaintiff did not suffer a tangible employment

22

action and, as a result, the affirmative defense adopted in <u>Aguas</u> was available to bar plaintiff's claims as a matter of law. We are convinced the facts reflected in the parties' <u>Rule</u> 4:46-2 statements, when viewed in the light most favorable to plaintiff, present a genuine issue of material fact as to whether Dellafave's sexually harassing conduct culminated in a tangible employment action—the termination of plaintiff's employment, a loss of income, or both. <u>See</u> <u>Aguas</u>, 220 N.J. at 522. That fact issue precludes a proper determination defendant is entitled to summary judgment based on the affirmative defense adopted in <u>Aguas</u> on defendant's narrowly targeted summary judgment motion. The motion court erred by holding otherwise.

Reversed and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

23