823 A.2d 844 (2003)
360 N.J. Super. 472
David CLAYPOTCH and Beth Claypotch, his wife, Plaintiffs-Appellants,
v.
HELLER, INC., Defendant/Third Party Plaintiff-Respondent,
v.
FICEP, S.p.A., Third Party Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued April 1, 2003.
Decided May 30, 2003.
*847 Evan L. Goldman, Edison, argued the cause for appellants (Starr, Gern, Davison & Rubin, Roseland, attorneys; Mr. Goldman, of counsel and on the brief; Ben-David Seligman, West Orange, on the brief).
Harry D. McEnroe, Florham Park, argued the cause for respondent Heller, Inc. (Heim & McEnroe, attorneys; Mr. McEnroe and Mary Seitz, on the brief).
John R. Altieri, Hackensack, argued the cause for respondent FICEP, S.p.A. (Pino & Associates and Mr. Altieri, attorneys; Mr. Altieri, on the brief).
Before Judges SKILLMAN, LEFELT and WINKELSTEIN. *845
*846 The opinion of the court was delivered by SKILLMAN, P.J.A.D.
In this appeal, we consider the obligation of a plaintiff who has identified a defendant by a fictitious name to exercise due diligence in amending the complaint to state the defendant's true name when the fictitiously named defendant has received notice of the action by service of a third-party complaint. The appeal also involves interpretation of a 1995 statute that allows a retail seller of an alleged defective product to be relieved of liability by filing an affidavit correctly identifying the manufacturer.
On February 4, 1997, plaintiff sustained a serious injury to his right eye while operating a hydraulic punch press in the course of his employment at Norsal Distribution Associates (Norsal). According to the report of plaintiff's safety expert, the accident was caused by a design defect in the punch press's safety guard, which allowed a piece of metal to shoot from the machine into plaintiff's eye.
At the top on the operator's side of the punch press is an oval panel which states in large capital letters: "HELLER." This side of the punch press also has a small metal plate affixed which sets forth the machine's serial number, model, size and specifications. At the top of this plate is the name "FICEP," followed in small letters by "S.p.A." At the bottom the name "HELLER" is repeated in capital letters next to the name "E.G. HELLER'S SON, INC.," also in capital letters, followed by Heller's address and telephone number. The back of the machine has affixed another plate, which includes a sign with Heller's full corporate name and address, with the name "HELLER" and Heller's initials "EHG" in capital letters on both sides of the name.
Based on the labeling on the punch press, both plaintiff and his employer believed that the machine had been manufactured by Heller. Accordingly, on February 3, 1999, one day before expiration of the two-year limitations period, plaintiff filed this products liability action against Heller.[1] Although Heller was the only specifically named defendant, the complaint also joined as defendants "ABC Corporations 1-10" and "John Does 1-10," representing unidentified "manufacturers, distributors, designers, repairers and sellers" of the punch press.
On September 13, 1999, Heller filed a motion for leave to file a third-party complaint against FICEP, S.p.A. (FICEP). The certification in support of the motion simply stated that "[p]retrial discovery has revealed the existence of a person or entity potentially liable for all or part of plaintiff's claim in this suit, specifically third-party defendant FICEP, S.p.A.," without indicating the basis of Heller's claim *848 against FICEP. On October 8, 1999, the trial court granted Heller's motion.
Because FICEP is an Italian corporation, Heller had to get its third-party complaint and summons translated into Italian and served in Italy. This process took several months. FICEP filed an answer to Heller's third-party complaint on March 23, 2000 and actively participated in the litigation from that point forward.
On March 9, 2001, the trial court entered a case management order which required all discovery to be completed by June 1, 2001 and stated that a trial would be scheduled in July 2001.
On May 2, 2001, plaintiff moved to amend its complaint to name FICEP as a direct defendant. The trial court denied the motion on the ground that plaintiff had "known the identity of FICEP for over a year."
Shortly after the denial of plaintiff's motion to add FICEP as a defendant, Heller moved for summary judgment on the basis of N.J.S.A. 2A:58C-9(a), which provides that the seller of a product may be relieved of liability by "fil[ing] an affidavit certifying the correct identity of the manufacturer." In support of its motion, Heller filed an affidavit certifying that FICEP was the manufacturer of the punch press. On June 8, 2001, the trial court entered an order granting Heller's motion.
Plaintiff appeals from the orders denying its motion for leave to add FICEP as a direct defendant and granting Heller's motion for summary judgment. We reverse both orders.

I
Rule 4:26-4 provides in pertinent part:
In any action, ... if the defendant's true name is unknown to the plaintiff, process may issue against the defendant under a fictitious name, stating it to be fictitious and adding an appropriate description sufficient for identification. Plaintiff shall on motion, prior to judgment, amend the complaint to state defendant's true name, such motion to be accompanied by an affidavit stating the manner in which that information was obtained.
The identification of a defendant by a fictitious name, as authorized by Rule 4:26-4, may be used only if a defendant's true name cannot be ascertained by the exercise of due diligence prior to filing the complaint. Mears v. Sandoz Pharms., Inc., 300 N.J.Super. 622, 631-33, 693 A.2d 558 (App.Div.1997); Cardona v. Data Sys. Computer Ctr., 261 N.J.Super. 232, 235, 618 A.2d 864 (App.Div.1992). If a defendant is properly identified by a fictitious name before expiration of the applicable limitations period, an amended complaint substituting a fictitiously named defendant's true name will relate back to the date of filing of the original complaint. Viviano v. CBS, Inc., 101 N.J. 538, 548, 503 A.2d 296 (1986); Farrell v. Votator Div. of Chemetron Corp., 62 N.J. 111, 120-23, 299 A.2d 394 (1973). To be entitled to the benefit of this rule, a plaintiff must proceed with due diligence in ascertaining the fictitiously identified defendant's true name and amending the complaint to correctly identify that defendant. Farrell, supra, 62 N.J. at 120, 299 A.2d 394; Johnston v. Muhlenberg Reg'l Med. Ctr., 326 N.J.Super. 203, 208, 740 A.2d 1122 (App. Div.1999). In determining whether a plaintiff has acted with due diligence in substituting the true name of a fictitiously identified defendant, a crucial factor is whether the defendant has been prejudiced by the delay in its identification as a potentially liable party and service of the amended complaint. Farrell, supra, 62 N.J. at 122-23, 299 A.2d 394.
*849 The trial court denied plaintiff's motion to substitute FICEP for a fictitiously named defendant solely on the ground that plaintiff failed to proceed with due diligence in moving to amend his complaint after learning FICEP's identity. However, FICEP argues, as an alternative ground for affirmance, that plaintiff failed to exercise due diligence in identifying FICEP as the manufacturer before filing his complaint. Consequently, we first consider whether plaintiff exercised due diligence in identifying FICEP as the manufacturer of the punch press before filing the complaint and second whether plaintiff acted with due diligence in substituting FICEP as a direct defendant once he became aware that FICEP, not Heller, was the manufacturer.
Plaintiff had a reasonable basis for believing that Heller was the manufacturer of the punch press. On the top of the operator's side of the machine is a panel which states in large capital letters: HELLER. In the middle on the same side of the punch press machine is a metal plate which sets forth the machine's serial number, model, size and specifications. At the top of this plate in large capital letters is the name "FICEP," followed in small letters by the initials "S.p.A." At the bottom of this plate, also in large capital letters, is the name HELLER, followed by its full corporate name, address and telephone number. The back of the machine also contains a metal plate with Heller's full corporate name, address and telephone number. On the top of this side of the machine, beside a logo, is the word "FICEP" in capital letters. However, there is no indication what this word signifies. Consequently, even if plaintiff had looked at the back of the machine, he could have reasonably thought FICEP was a Heller brand or product model name. Moreover, even if plaintiff noticed the initials "S.p.A." after FICEP in the one place those initials appear, it would be unreasonable to expect a layman or even a lawyer to know that this is the Italian equivalent of "Inc." We also note that the principal of plaintiff's employer certified that he believed, based on the labeling placed on the machine and the prominent mention of Heller in the operating manual, that Heller was the manufacturer. Therefore, we reject FICEP's argument that plaintiff should have ascertained before filing his complaint that FICEP, not Heller, was the manufacturer of the punch press.
We consider next whether plaintiff acted with due diligence in moving to substitute FICEP for a fictitiously identified defendant. When Heller moved for leave to file a third-party complaint, its supporting certification simply identified FICEP as a party "potentially liable for all or part of plaintiff's claim."[2] Thus, this motion did not inform plaintiff that FICEP had manufactured the punch press. Moreover, FICEP's answer, filed on March 23, 2000, did not identify FICEP as the manufacturer. However, plaintiff's counsel must have become aware through informal discussions with other counsel that FICEP was the manufacturer because he filed a certification on July 25, 2000, which stated that "[t]he defendant manufacturer *850 is an Italian company and has only been in this case for approximately three months."
After learning that FICEP was the manufacturer of the punch press, plaintiff did not move to name FICEP as a direct defendant until more than nine months later, on May 2, 2001. The question, therefore, is whether this nine-month delay manifested a lack of due diligence which justified the denial of plaintiff's motion to join FICEP as a direct defendant.
The purpose of the requirement that a plaintiff exercise due diligence in ascertaining the true name of a fictitiously named defendant and promptly serve an amended complaint with the defendant's correct name is to prevent undue prejudice as a result of delay in that defendant being made aware of the action. See Johnston, supra, 326 N.J.Super. at 208, 740 A.2d 1122. However, even though "a defendant suffers some prejudice merely by the fact that it is exposed to potential liability for a lawsuit after the statute of limitations has run[,]" Mears, supra, 300 N.J.Super. at 631, 693 A.2d 558, absent evidence that "the lapse of time has resulted in a loss of evidence[,] impairment of ability to defend" or "advantage" to plaintiffs, "[j]ustice impels strongly towards affording the plaintiffs their day in court on the merits of their claim[.]" Farrell, supra, 62 N.J. at 122, 299 A.2d 394.
In arguing that plaintiff's delay in moving to name it as a direct defendant constituted a lack of due diligence, FICEP relies upon cases in which service of an amended complaint identifying the true name of the fictitiously named defendant was a manufacturer's first notice that it was being sued. See, e.g., Johnston, supra, 326 N.J.Super. at 206-08, 740 A.2d 1122; Mears, supra, 300 N.J.Super. at 632-33, 693 A.2d 558. In such a case, any delay in identifying and serving an amended complaint upon a fictitiously named defendant directly implicates the policy of repose a statute of limitations is designed to serve. See Johnston, supra, 326 N.J.Super. at 208, 740 A.2d 1122; Mears, supra, 300 N.J.Super. at 630, 693 A.2d 558. However, once FICEP was served with Heller's third-party complaint, it had notice of plaintiff's injury and of its potential liability. To protect its interests, FICEP then retained counsel and actively participated in the litigation, including taking plaintiff's deposition and submitting an expert report. FICEP has not suggested any additional discovery or other pretrial preparation it could have undertaken if it had been named as a direct defendant earlier. FICEP also should have reasonably anticipated it would be named as a direct defendant sooner or later. In short, FICEP has not shown that it suffered any prejudice as a result of plaintiff's delay in moving to name it as a direct defendant. See Lawlor, supra, 56 N.J. at 343, 266 A.2d 569. Therefore, the trial court erred in denying the motion.[3]

II
In 1995, the Legislature enacted N.J.S.A. 2A:58C-8 to -9 (L. 1995, c. 141), which allows a seller of an alleged defective product to be relieved of liability under certain circumstances by filing an affidavit correctly identifying the manufacturer of the product.[4] This legislation provides in pertinent part:

*851 a. In any product liability action against a product seller, the product seller may file an affidavit certifying the correct identity of the manufacturer of the product which allegedly caused the injury, death or damage.
b. Upon filing the affidavit pursuant to subsection a. of this section, the product seller shall be relieved of all strict liability claims, subject to the provisions set forth in subsection d. of this section. Due diligence shall be exercised in providing the plaintiff with the correct identity of the manufacturer or manufacturers.
c. The product seller shall be subject to strict liability if:
(2) The manufacturer has no known agents, facility, or other presence within the United States; or
(3) The manufacturer has no attachable assets or has been adjudicated bankrupt and a judgment is not otherwise recoverable from the assets of the bankruptcy estate.
d. A product seller shall be liable if:
(1) The product seller has exercised some significant control over the design, manufacture, packaging or labeling of the product relative to the alleged defect in the product which caused the injury, death or damage....

[N.J.S.A. 2A:58C-9.]
There is no reported decision by a New Jersey court interpreting N.J.S.A. 2A:58C-9. Moreover, although a number of other states have enacted statutes that provide a similar defense to a seller that was not responsible for an alleged product defect, see 1 American Law of Products Liability 3d § 5.15 at 30 (1994), we are not aware of any state with a statute containing language comparable to N.J.S.A. 2A:58C-9.[5] Therefore, any decisions interpreting the statutes in other states would not be directly relevant to the interpretation of N.J.S.A. 2A:58C-9.
There is no need to undertake a comprehensive review of the various subsections of N.J.S.A. 2A:58C-9 in order to decide this appeal. However, it is appropriate to outline the provisions relevant to Heller's argument that it relieved itself of potential liability for plaintiff's claim simply by identifying FICEP as the punch press manufacturer.
Although the purpose of N.J.S.A. 2A:58C-9, in the words of the sponsor, was "to reduce litigation costs borne by innocent retailers in product liability actions[,]" Sponsor's Statement to S. 1495 of 1995, enacted as L. 1995, c. 141, the statute relieves a seller of liability only if it had no significant responsibility for the alleged product defect and the manufacturer is amenable to service of process and is likely to be able to satisfy any judgment. Thus, a product seller may be subject to liability *852 if it "exercised some significant control over the design, manufacture, packaging or labeling of the product relative to the alleged defect in the product which caused the injury, death or damage." N.J.S.A. 2A:58C-9(d)(1).[6] A product seller also remains subject to liability if "[t]he manufacturer has no known agents, facility, or other presence within the United States," or "[t]he manufacturer has no attachable assets or has been adjudicated bankrupt and a judgment is not otherwise recoverable from the assets of the bankruptcy estate." N.J.S.A. 2A:58C-9(c)(2),(3). Consequently, before a retail seller will be relieved of liability under N.J.S.A. 2A:58C-9, it must be shown to be truly innocent of responsibility for the alleged defective product and the injured party must retain a viable claim against the manufacturer.[7]
To assure that the injured party will retain a viable claim against the manufacturer after the seller is dismissed from the action, N.J.S.A. 2A:58C-9(b) provides:
Due diligence shall be exercised [by the seller] in providing the plaintiff with the correct identity of the manufacturer or manufacturers.
A seller's compliance with this due diligence requirement reduces the possibility that the plaintiff will be confronted, as in this case, with an assertion that he failed to exercise due diligence in amending his complaint to identify the true name of a fictitiously named manufacturer-defendant. In addition, a seller's early revelation of the manufacturer's identity enables a plaintiff to conduct discovery of the manufacturer before the passage of time results in a loss of documents or other information required to prove a claim.
A seller's compliance with the due diligence requirement of N.J.S.A. 2A:58C-9(b) also promotes efficient judicial management. A product seller's motion for dismissal under N.J.S.A. 2A:58C-9 may require the plaintiff to conduct additional discovery that would not be required to show the existence of a defective product. Thus, a plaintiff would not have to obtain information relating to whether the manufacturer has "known agents, facilit[ies] or other presence within the United States," N.J.S.A. 2A:58C-9(c)(2), or whether it has "attachable assets or has been adjudicated bankrupt [,]" N.J.S.A. 2A:58C-9(c)(3), in order to prove a products liability claim, but discovery relating to these subjects may be necessary if a product seller seeks dismissal under N.J.S.A. 2A:58C-9(b) based on its certification of the manufacturer's identity. Consequently, unless the product seller identifies the manufacturer and moves for dismissal during the prescribed discovery period, the plaintiff may be forced to seek an extension of time to conduct discovery that would be relevant only to the product seller's defense under N.J.S.A. 2A:58C-9.
In this case, Heller did not send an affidavit to plaintiff certifying that *853 FICEP was the manufacturer of the punch press and move for dismissal until May 10, 2001, on the eve of trial. However, as previously discussed, plaintiff was aware no later than July 2000 that FICEP was the manufacturer, and plaintiff could have joined FICEP as a direct defendant any time thereafter. Furthermore, we have concluded in section I of this opinion that plaintiff is entitled to maintain its product liability claim against FICEP. Under these circumstances, it would be unjust to foreclose Heller from obtaining dismissal under N.J.S.A. 2A:58C-9(b) on the ground that it failed to comply with the due diligence requirement of N.J.S.A. 2A:58C-9, especially in view of the fact that this statute has not previously been subject to judicial interpretation. Nevertheless, we caution product sellers that in future cases a motion for dismissal under N.J.S.A. 2A:58C-9 may be denied based on a failure to comply with the due diligence requirement.
In support of its motion for dismissal, Heller submitted a certification of Robert E. Heller, who identified himself as "an employee of E.G. Heller's Son, Inc.," which stated in pertinent part:
3. E.G. Heller's Son, Inc. does not manufacture Ironworkers and did not manufacturer the machine at issue.
4. Based upon the information provided to me, I have identified that the subject Ironworker as having been manufactured by FICEP, S.p.A.
6. E.G. Heller's Son, Inc. sold the Ironworker in question to Plaintiff's employer Norsal Distribution Associated.
8. To the best of my knowledge and belief, FICEP, S.p.A. is solvent and has not been adjudicated bankrupt.
9. To the best of my knowledge and belief, E.G. Heller's Son, Inc. did not exercise significant control over the design, manufacture, packaging or labeling of the Ironworker at issue.
Heller argues that because plaintiff failed to submit a statement of material facts disputing its "Statement of Undisputed Material Facts," which repeated the factual recitations in the certification quoted above, Heller's factual assertions must be "deemed admitted."
Under Rule 4:46-2(a), as amended in 1996, a party moving for summary judgment is required to submit a "statement of material facts," which must "set forth in separately numbered paragraphs a concise statement of each material fact as to which the movant contends there is no genuine issue together with a citation to the portion of the motion record establishing the fact or demonstrating that it is uncontroverted." Rule 4:46-2(b) requires a party opposing a motion for summary judgment to "file a responding statement either admitting or disputing each of the facts in the movant's statement." Rule 4:46-2(b) provides that "all material facts in the movant's statement which are sufficiently supported will be deemed admitted for purposes of the motion only, unless specifically disputed by citation conforming to the requirements of paragraph (a) demonstrating the existence of a genuine issue as to the fact." These requirements for the filing of statements of material facts by parties to a motion for summary judgment are designed to "focus ... attention on the areas of actual dispute" and "facilitate the court's review" of the motion. Pressler, Current N.J. Court Rules, comment on R. 4:46-2 at 1657 (2003).
Heller claims that because plaintiff did not file a responding statement disputing the factual assertions in Heller's statement, those assertions must be "deemed admitted." However, the only factual assertions in a statement of material *854 facts that are deemed admitted, if not disputed in the statement submitted by the party opposing summary judgment, are those which are "sufficiently supported." R. 4:46-2(b). If a party relies upon an affidavit to establish a fact required to demonstrate entitlement to summary judgment, the affidavit must be "made on personal knowledge, setting forth only facts which are admissible in evidence to which the affiant is competent to testify." R. 1:6-6; see Jeter v. Stevenson, 284 N.J.Super. 229, 233, 664 A.2d 952 (App. Div.1995); Sellers v. Schonfeld, 270 N.J.Super. 424, 427, 637 A.2d 529 (App. Div.1993). Therefore, if an affidavit supporting a factual assertion in a statement of material facts does not comply with Rule 1:6-6, the assertion is not "sufficiently supported" and thus will not be "deemed admitted" even though it is not contested by a responding statement.
Robert Heller's certification did not comply with Rule 1:6-6 because it did not indicate he had any personal knowledge of the facts he asserted. His assertion that FICEP had manufactured the punch press was "based upon the information provided to me." His assertions that FICEP was solvent and had not been adjudicated bankrupt and that Heller did not exercise significant control over the design, manufacture, packaging or labeling of the punch press were both introduced by the qualification: "To the best of my knowledge and belief." The mandate of Rule 1:6-6 that an affidavit supporting a motion must be based on "personal knowledge" is not satisfied by a statement "based merely on `information and belief.'" Pressler, supra, comment 2 on R. 1:6-6 (2003); see Stowell v. N.J. State Ass'n of Chiefs of Police, 325 N.J.Super. 512, 520-21 n. 2, 739 A.2d 1011 (App.Div.1999). Thus, Heller's statement of material facts in support of its summary judgment motion was not "sufficiently supported" by competent evidence. Moreover, even if Robert Heller purported to have personal knowledge of FICEP's financial condition and Heller's role in the design, manufacture, packaging and labeling of the punch press, plaintiff would be entitled to conduct discovery concerning those allegations because they are based on information solely within the knowledge of FICEP and Heller. See Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 193-94, 536 A.2d 237 (1988); Bilotti v. Accurate Forming Corp., 39 N.J. 184, 206, 188 A.2d 24 (1963). Therefore, the summary judgment in Heller's favor must be reversed, subject to renewal upon completion of the discovery relevant to the availability of the defense provided by N.J.S.A. 2A:58C-9.
Accordingly, we reverse the orders denying plaintiff's motion for leave to amend its complaint to add FICEP as a direct defendant and granting Heller's motion for summary judgment.
NOTES
[1] The complaint also asserted a per quod claim on behalf of plaintiff's wife Beth.
[2] We note that plaintiff could have amended its complaint to name FICEP as a direct defendant without leave of court if it had acted within forty-five days after service of the order granting Heller leave to file a third-party complaint against FICEP. R. 4:8-1(b). However, such an amended complaint would not have related back to the date of filing the complaint, thus satisfying the two-year limitations period which expired one day later, unless it substituted FICEP for a fictitiously identified defendant pursuant to Rule 4:26-4. See Lawlor v. Cloverleaf Memorial Park, Inc., 56 N.J. 326, 339-43, 266 A.2d 569 (1970).
[3] Because we conclude that the trial court should have allowed plaintiff to amend its complaint to substitute FICEP for a fictitiously named defendant, there is no need to consider plaintiff's alternative argument that under 2A:58C-9(e), plaintiff's complaint against Heller tolled the running of the limitations period on its claim against FICEP.
[4] There is some question whether this legislation was intended to be a supplement to the Products Liability Act or an independent enactment. See Hinojo v. N.J. Mfrs. Ins. Co., 353 N.J.Super. 261, 269 n. 1, 802 A.2d 551 (App.Div.2002); William A. Dreier, et al., New Jersey Products Liability & Toxic Torts Law, § 12.1, at 316 (2003 ed.). This appeal does not require resolution of the issue.
[5] However, the Model Uniform Products Liability Act, drafted by the United States Department of Commerce, includes provisions similar to N.J.S.A. 2A:58C-9(c) and 9(d)(1), which are designed to prevent a retail seller from being dismissed from the action if the manufacturer is not amenable to service of process or may be insolvent. See 44 Fed.Reg. 62,714 to 62,750 (1979). The statutes enacted in a number of states also include provisions designed to serve this purpose. See e.g., Colo.Rev.Stat. Ann. § 13-21-402 (West 1997); Del.Code Ann. tit. 18 § 7001 (2002); 735 III. Comp. Stat. Ann. 5/2-621 (1993 & Supp. 1996); Minn.Stat. Ann. § 544.41 (West 2000); Mo. Ann. Stat. § 537.762 (West 2000); Wash. Rev.Code Ann. § 7.72.040 (West 1992).
[6] A product seller also may be subject to liability if it "knew or should have known of the defect in the product which caused the injury, death or damage or the plaintiff can affirmatively demonstrate that the product seller was in possession of facts from which a reasonable person would conclude that the product seller had or should have had knowledge of the alleged defect in the product which caused the injury, death or damage; or... created the defect in the product which caused the injury, death or damage." N.J.S.A. 2A:58C-9(d)(2),(3). Plaintiff does not rely upon either of these provisions.
[7] One commentary suggests that dismissal of a product liability claim against a retail seller based on its identification of the manufacturer should be "without prejudice" so that the plaintiff is not left without a remedy in the event the manufacturer subsequently becomes insolvent. See Dreier, supra, § 12:1-1 at 319; see also Restatement (Third) of Torts: Products Liability § 1 comment e (1998).