**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3504-23

ROUTE 22 NISSAN, INC.,

    Plaintiff-Respondent,

v.

EUROPEAN AUTO EXPO,
LLC, 2 LIONS REALTY LLC,
and LENNY SHALABY
a/k/a MOHAMED SHALABY,

    Defendants-Appellants.

_____

Argued September 16, 2025 – Decided September 24, 2025

Before Judges Firko and Perez Friscia.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-3598-21.

Gerald R. Salerno argued the cause for appellants (Aronsohn Weiner Salerno & Kaufman, PC, attorneys; Gerald R. Salerno and Steven R. Vanderlinden, on the briefs).

Nicholas P. Eliades argued the cause for respondent (Stevens & Lee, PC, attorneys; Salvatore A.

Giampiccolo, of counsel; Nicholas P. Eliades, on the brief).

PER CURIAM

In this commercial lease dispute, defendants European Auto Expo, LLC (European), 2 Lions Realty LLC (Lions), and Lenny Shalaby (collectively defendants), appeal from a January 19, 2024 order granting plaintiff Route 22 Nissan, Inc.'s motion for partial summary judgment and a May 29, 2024 final judgment in favor of plaintiff and against defendants in the amount of $130,045.28. Because we conclude there were genuine issues of material fact that precluded judgment as a matter of law under Rule 4:46-2(c), we vacate the orders, reverse and remand.

I.

We derive the following facts from the summary judgment motion record viewed in the light most favorable to defendants. Templo Fuente De Vida Corp., v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). On March 22, 2016, plaintiff and European entered into an Assignment and Assumption of Lease (Assignment), which assigned a Lease Agreement[1] for the premises located at 399 Route 22 in Hillside. The Assignment was for a period of five

---

[1] The original Lease Agreement was executed on January 13, 1994, between plaintiff and a party not involved in this litigation.

years ending on February 28, 2021, with an option to renew for an additional five years. The Assignment required European to pay rent with two-percent annual increases and property taxes for the leased premises. In March 2016, European commenced occupancy as an auto dealership and invested "significant sums of money" in the leased premises for its business. European claimed it timely paid rent[2] to plaintiff under the terms of the Assignment.

In April 2020, the New Jersey Department of Transportation (NJDOT) permanently acquired part of the premises through eminent domain. Consequently, plaintiff reduced the monthly rent from $37,998 to $32,300, due to the NJDOT taking. In October 2020, European notified plaintiff that it was not going to extend the assignment term due to expire on February 28, 2021. On December 10, 2020, plaintiff acknowledged European's notice of nonrenewal. Plaintiff did not reserve any rights for unpaid rental obligations or note a breach of the Assignment, which might indicate any monies were due and owing.

Up through December of 2020, European made fifty-one rental payments totaling $1,884,824.86, which European claims plaintiff accepted in full without

---

[2] Plaintiff alleges that European was required to pay the following monthly rent amounts: (1) $29,925.00 for the 2016-2017 year, (2) $30,523.50 for the 2017-2018 year, (3) $31,133.97 for the 2018-2019 year, (4) $31,756.65 for the 2019-2020 year and (5) $32,391.78 for the 2020-2021 year.

A-3504-23

protest or any reservation of rights. On December 15, 2020, plaintiff notified European—for the first time—that European owed plaintiff the additional sum of $189,895.28, based on a discrepancy in rent payments and other amounts allegedly due, dating back to March 2017. The deficiency amount included non-payment of rent for the months of January and February 2021.

On October 19, 2021, plaintiff filed a complaint in the Law Division alleging: breach of contract by European (count one); unjust enrichment as against European (count two); and breach of guaranty by Lions and Shalaby (count three). Plaintiff alleged European failed to comply with the terms of the Assignment by not paying rent and real estate taxes. Plaintiff also alleged European left the premises "in worse than broom-clean condition and left a substantial amount of property" on the premises. Plaintiff alleged Lions and Shalaby breached the Guaranty, which guaranteed European's obligations under the Assignment. Plaintiff sought compensatory damages "in an amount to be determined at trial," interest, and attorney's fees.

Defendants filed an answer, separate defenses, and a counterclaim in response to plaintiff's complaint. In their counterclaim, defendants alleged they were "shocked" to receive notice for the first time on December 15, 2020, of an alleged discrepancy in rent and other amounts due. Defendants claimed that the

A-3504-23

notice of the "purported deficiency was retaliatory" and motivated by European's nonrenewal of the Assignment term.

In addition, defendants alleged plaintiff never notified European of any increases in any amounts due under the Assignment prior to December 15, 2020, and pursuant to the Uniform Declaratory Judgments Law, N.J.S.A. 2A:16-50 to -62, an actual case or controversy exists between plaintiff and European regarding the "ex post facto increases," which plaintiff sought to impose. Defendants' counterclaim also asserted that plaintiff's continued acceptance of payments constituted a "waiver" barring plaintiff from any monetary recovery. Defendants sought a judgment declaring that plaintiff is not entitled to any increase in amounts allegedly due under the Assignment, due to plaintiff's acceptance of amounts paid as well as attorney's fees. Plaintiff filed an answer to the counterclaim.

Following the close of discovery, plaintiff moved for partial summary judgment seeking damages in the amount of $189,895.28. Defendants opposed plaintiff's motion and cross-moved for partial summary judgment seeking an order precluding plaintiff from seeking damages for rental arrears and any other payments arising out of any purported breach of the Assignment and Assumption of Lease Agreement occurring before December 15, 2020. In support of their

cross-motion, defendants submitted a statement of additional material facts and a counterstatement of undisputed facts pursuant to Rule 4:46-2(b).  Plaintiff did not respond to defendants' counterstatement of undisputed facts.

The trial court conducted oral argument on the motions.  Plaintiff argued that defendants produced no evidence to show they fully paid the monthly rent.  On the issue of waiver, plaintiff maintained that its acceptance of partial rent did not constitute a waiver of the full amount due, citing Cnty. of Morris v. Fauver, 153 N.J. 80, 104-05 (1998).

Defendants argued that plaintiff did not respond to their counterstatement of undisputed facts filed with their cross-motion.  Citing Carteret Props. v. Variety Donuts, Inc., 49 N.J. 116, 129 (1967), defendants contended that waiver applied because plaintiff had actual knowledge of the alleged unpaid rent and continued to accept their rental payments.  Defendants also argued that plaintiff was barred from claiming unpaid rent from March 2017 forward under the doctrine of laches.

In an oral opinion following arguments, the trial court granted plaintiff's motion for partial summary judgment and denied defendants' cross-motion for partial summary judgment.  The trial court determined that "receipt or acceptance of rent or additional rent by the landlord shall not be deemed to be a

6

waiver of any [or] all terms of the lease . . . or [which] may be filed or exercised under this lease," citing to section 12.2 of the Lease Agreement.  The trial court held the Lease Agreement was clear, defendants agreed to the terms of the Assignment, and performed their duties as a tenant.  Two memorializing orders were entered.

Thereafter, plaintiff withdrew its remaining claims related to clean-up costs and agreed to credit European for its $59,850 deposit, which the trial court did not account for.  On May 29, 2024, final judgment was entered in favor of plaintiff and against defendants in the amount of $130,045.28 ($189,895.28 - $59,850), together with costs of suit pursuant to Rule 4:42-8[3] and post-judgment interest pursuant to Rule 4:42-11(a)(iii).[4]  This appeal followed.

---

[3]  Rule 4:42-8 provides in relevant part for "taxed costs" to be awarded to a prevailing party.

[4]  Rule 4:42-11(a)(iii) states that,

> "[e]xcept as otherwise ordered by the court or provided by law, judgments, awards and orders for the payment of money, taxed costs and attorney's fees shall bear simple interest as follows:  . . . judgments exceeding the monetary limit of the Special Civil Part at the time of entry:  in the manner provided for in subparagraph (a)(ii) of this Rule until September 1, 1996; thereafter, at the rate provided in subparagraph (a)(ii) plus 2% per annum.

On appeal, defendants argue the trial court erred:

(1) by ignoring plaintiff's failure to respond to defendant's counterstatement of undisputed facts, precluding summary judgment in plaintiff's favor as a matter of law;

(2) by ignoring the pertinent disputed facts when it failed to provide any basis for its award;

(3) by failing to consider that plaintiff's continued acceptance of rent constitutes a waiver of past breaches; and

(4) by failing to consider that the doctrine of laches firmly applies to plaintiff's failure to provide timely notification of the purported unpaid rent.

II.

We review a grant of summary judgment using the same standard that governs the motion judge's decision. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018) (citing Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)). Under that standard, summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 528-29 (1995) (quoting R. 4:46-2).

A-3504-23

"An issue of material fact is 'genuine only if, considering the burden of persuasion at trial, the evidence submitted by the parties on the motion, together with all legitimate inferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact.'" Grande v. St. Clare's Health Sys., 230 N.J. 1, 24 (2017) (quoting Bhagat, 217 N.J. at 38).

We must give the non-moving party "the benefit of the most favorable evidence and most favorable inferences drawn from that evidence." Est. of Narleski v. Gomes, 244 N.J. 199, 205 (2020) (quoting Gormley v. Wood-El, 218 N.J. 72, 86 (2014)). However, we owe no special deference to the motion judge's legal analysis. RSI Bank, 234 N.J. at 472 (citing Templo Fuente De Vida Corp., 224 N.J. at 199).

"Summary judgment should be granted . . . 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

III.

Defendants argue that because plaintiff failed to submit a response to their counterstatement of material facts in support of their cross-motion for summary

9

judgment, defendants' factual assertions must be "deemed admitted" for the purposes of their cross-motion under Rule 4:46-2. Defendants maintain plaintiff had the "affirmative burden of responding," that burden is not "optional," and "cannot be satisfied by the presentation of incompetent or incomplete proofs," citing Polzo v. Cnty. of Essex, 196 N.J. 569, 586 (2008) (citations omitted). Defendants contend that the trial court misapplied the summary judgment standard because it failed to view the record in the light most favorable to defendants and failed to draw inferences that supported defendants' arguments contrary to Rule 4:46-2. Plaintiff counters the trial court properly determined as a matter of law that the "unambiguous contractual provision" in the Lease Agreement precluded defendants' waiver defense.

Under Rule 4:46-2(a),

> a party moving for summary judgment is required to submit a "statement of material facts," which must "set forth in separately numbered paragraphs a concise statement of each material fact as to which the movant contends there is no genuine issue together with a citation to the portion of the motion record establishing the fact or demonstrating that it is uncontroverted."
>
> [Claypotch v. Heller, Inc., 360 N.J. Super. 472, 488 (App. Div. 2003) (quoting R. 4:46-2(a)).]

A moving party's citation to the motion record "shall identify the document and shall specify the pages and paragraphs or lines thereof or the

specific portions of exhibits relied on" in support of each statement of material facts.  R. 4:46-2(a).  Rule 4:46-2 explains the manner in which non-movants may oppose a motion for summary judgment.  Under subsection (b), "a party opposing a motion for summary judgment shall 'file a responding statement either admitting or disputing each of the facts in the movant's statement.'" Claypotch, 360 N.J. Super. at 488 (quoting R. 4:46-2(b)).  The Rule also provides that "all material facts in the movant's statement which are sufficiently supported will be deemed admitted for purposes of the motion only, unless specifically disputed by citation conforming to the requirements of paragraph (a) demonstrating the existence of a genuine issue as to the fact."  Ibid.

However, those material facts "must still correlate" to legal conclusions under Rule 1:7-4(a).[5]  Allstate Ins. Co. v. Fisher, 408 N.J. Super. 289, 300 (App. Div. 2009) (citing R. 1:7-4(a)).  "Summary judgment requirements . . . are not optional."  Lyons v. Twp. of Wayne, 185 N.J. 426, 435 (2005).  A party's failure

---

[5] Rule 1:7-4 (a) states,

> The court shall, by an opinion or memorandum decision, either written or oral, find the facts and state its conclusions of law thereon in all actions tried without a jury, on every motion decided by a written order that is appealable as of right, and also as required by R[ule] 3:29.  The court shall thereupon enter or direct the entry of the appropriate judgment.

to comply with . . . Rule 4:46-2 can result in a considerable waste of judicial time and resources when trial and appellate courts are forced to search for factual issues by sifting through voluminous and confusing records—work that should be performed by the parties. [Id. at 435-436.]

The requirements impose a "relatively undemanding burden," but they are "critical," Housel v. Theodoridis, 314 N.J. Super. 597, 604 (App. Div. 1998), because they are "designed to focus [a court's] . . . attention on the areas of actual dispute and [to] facilitate the court's review of the motion." Claypotch, 360 N.J. Super. at 488 (citations omitted). A court therefore must decide a motion for summary judgment based on the "factual assertions . . . that were . . . properly included in the motion[s] [for] and [in opposition to] . . . summary judgment" in accordance with Rule 4:46-2. Kenney v. Meadowview Nursing and Convalescent Ctr., 308 N.J. Super. 565, 573 (App. Div. 1998); see also Lombardi v. Masso, 207 N.J. 517, 549 (2011) (Rivera-Soto, J., dissenting) (stating a trial court must decide a summary judgment motion "[b]ased on the [rule]-defined, specifically tailored summary judgment record before it"). Therefore, on cross-motions for summary judgment, we consider only those properly included factual assertions in the parties' Rule 4:46-2 statements in our

determination of the facts relevant to the legal issues presented.  See Kenney, 308 N.J. Super. at 573.

In this case, the trial court did not acknowledge or consider defendants' cross-motion and failed to find their counterstatement of facts as admitted for partial summary judgment purposes.  On this record, plaintiff's motion for partial summary judgment, viewed in the light most favorable to defendants, could have either lead to a determination in their favor or led to a denial in light of the genuine factual disputes.  Brill, 142 N.J. at 536.

Based upon our de novo review, we conclude the trial court's grant of partial summary judgment to plaintiff constituted error.  The trial court did not address each parties' motion and misapplied the summary judgment standard because it failed to view the record in the light most favorable to defendants and failed to draw inferences in support of defendants' arguments.  See Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016).  On remand, the trial court shall consider both parties' motions for partial summary judgment anew and consider the entire factual record and legal arguments presented.

IV.

Next, defendants argue the trial court erred in granting partial summary judgment to plaintiff and entering final judgment without providing any factual

findings or addressing the disputed facts. Defendants contend the trial court did not set forth any details to support its determinations. Defendants dispute the "methodology, calculation, and underlying basis" for the ruling, as well as the trial court's determination to award costs and fees.

Rule 1:7-4 states that a judge must "find the facts and state its conclusions of law thereon in all actions tried without a jury, on every motion decided by a written order that is appealable as of right" in an oral or written opinion. "Although our standard of review from the grant of a motion for summary judgment is de novo, [Igdalev, 225 N.J. at 479], our function as an appellate court is to review the decision of the trial court, not to decide the motion tabula rasa." Est. of Doerfler v. Fed. Ins. Co., 454 N.J. Super. 298, 301-02.

Here, the trial court was "obliged to set forth factual findings and correlate them to legal conclusions." Doerfler, 454 N.J. Super. at 301. The trial court did not address how it resolved the conflicting factual disputes about defendants' payment history or the waiver argument. Moreover, the trial court did not explain how it entered judgment in the amount of $189,895.28 in plaintiff's favor and why defendants were not credited for their $59,850 deposit in the January 19, 2024 order. Because the trial court failed to comply with Rule 1:7-4(a), we reverse and remand.

14

V.

We next address defendants' argument the trial court erred by failing to consider plaintiff's continued acceptance of rent for four years without objection on the issue of waiver. Defendants contend plaintiff "cashed every single check" from European and continued to do so even after plaintiff "unilaterally lowered the rent in 2020" in light of the NJDOT taking. Citing Carteret, defendants maintain the waiver upon acceptance and continued acceptance of rent applies whether or not the Lease Agreement includes a provision for failure of plaintiff—as landlord—"to insist upon strict performance of its covenants." 49 N.J. at 129.

Plaintiff counters that the Assignment's clear language precludes a finding of waiver. Plaintiff argues the factual and procedural predicates in Carteret are substantially different from those in the matter under review. Citing Fauver, plaintiff posits the clear terms of the Assignment prevail, and "mistaken payments over time, accepted in error, do not constitute waiver." 153 N.J. at 104-05.

"[C]ontract interpretation is . . . 'subject to de novo review by an appellate court.'" Boyle v. Huff, 257 N.J. 468, 477 (2024) (quoting Kieffer v. Best Buy, 205 N.J. 213, 222 (2011)). "Thus, '[w]e accord no special deference to the trial

court's . . . interpretive analysis and look at the contract with fresh eyes.'" Ibid. (quoting GMAC Mortg., LLC v. Willoughby, 230 N.J. 172, 183 (2017) (internal quotation marks omitted)).

"A court's objective in construing a contract is to determine the intent of the parties." Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 320 (2019). "The plain language of the contract is the cornerstone of the interpretive inquiry; 'when the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result.'" Barila v. Bd. of Educ. of Cliffside Park, 241 N.J. 595, 616 (2020) (quoting Quinn v. Quinn, 225 N.J. 34, 45 (2016)).

"The court's role is to consider the agreement's terms 'in the context of the circumstances under which it was written,' 'accord to the language a rational meaning in keeping with the expressed general purpose[,]' and apply the agreement accordingly." Accounteks.Net v. CKR Law, LLP, 475 N.J. Super. 493, 504 (App. Div. 2023) (alteration in original) (quoting Conway v. 287 Corp. Ctr. Assocs., 187 N.J. 259, 269 (2006)). The "court's task [is] 'not to rewrite a contract for the parties better than or different from the one they wrote for themselves." Igdalev, 225 N.J. at 483 (quoting Kieffer, 205 N.J. at 223).

"To the extent that there is any ambiguity in the expression of the terms . . . , a hearing may be necessary to discern the intent of the parties at the time the agreement was entered and to implement that intent." Quinn, 225 N.J. at 45. "A contract is ambiguous if its terms are 'susceptible to at least two reasonable alternative interpretations.'" Capparelli v. Lopatin, 459 N.J. Super. 584, 604 (App. Div. 2019) (quoting Nester v. O'Donnell, 301 N.J. Super. 198, 210 (App. Div. 1997)). "When a contract is ambiguous in a material respect, the parties must be given the opportunity to illuminate the contract's meaning through the submission of extrinsic evidence." Ibid.

"If an ambiguity exists, then resolution of the document's intended meaning is a fact issue." In re Trust of Nelson, 454 N.J. Super. 151, 161 (App. Div. 2018). "Disputes of material fact should not be resolved on the basis of certifications . . . ." Palmieri v. Palmieri, 388 N.J. Super. 562, 564 (App. Div. 2006). Presented with a fact issue, "the court must conduct an evidentiary hearing." In re Trust of Nelson, 454 N.J. Super. at 163.

"Waiver . . . involves the intentional relinquishment of a known right, and thus it must be shown that the party charged with the waiver knew of his or her legal rights and deliberately intended to relinquish them." Largoza v. FKM Real Est. Holdings, Inc., 474 N.J. Super. 61, 83 (App. Div. 2022) (citing Shebar v.

Sanyo Bus. Sys. Corp., 111 N.J. 276, 291 (1988)). "The intent to waive need not be stated expressly, provided the circumstances clearly show that the party knew of the right and then abandoned it, either by design or indifference." Ibid. (citing Knorr v. Smeal, 178 N.J. 169, 177 (2003)). "The party waiving a known right must do so clearly, unequivocally, and decisively." Ibid. The definition of waiver therefore focuses predominantly on the intent of the waiving party. Marmo & Sons Gen. Contracting, LLC v. Biagi Farms, LLC, 478 N.J. Super. 593, 607 (App. Div. 2024). "[T]o decide whether a waiver has occurred, the court focuses on the actions of the person who held the right; the court seldom considers the effects of those actions on the opposing party." Id. at 608 (quoting Morgan v. Sundance, 596 U.S. 411, 417 (2022)).

"Waiver is never presumed." Cole v. Jersey City Med. Ctr., 215 N.J. 265, 276 (2013). A party claiming another has waived a right, bears the burden of establishing that waiver by "clear and convincing" evidence. Home Owners Constr. Co., 34 N.J. at 317. "The issue of whether a party waived its . . . right is a legal determination subject to de novo review." Cole, 215 N.J. at 275.

Here, the trial court relied on the following Lease Agreement provision in granting partial summary judgment to plaintiff:

> 12.2. The [l]andlord may restrain any breach or threatened breach of any covenant, agreement, term,

18

provision, or condition herein container, but the mention herein of any particular remedy shall not preclude the [l]andlord from any other remedy it might have, either at law, in equity, or otherwise. The failure of the [l]andlord to insist upon the strict performance of any of the terms of this lease or to exercise any right, remedy or election herein contained or permitted by law shall not constitute or be construed as a waiver or relinquishment of such term, right, remedy or election, but the same shall continue and remain in full force and effect. . . .

Notwithstanding the language contained in section 12.2, defendants point out the trial court concluded, as a matter of law, that plaintiff did not waive any rights and ignored the "surrounding facts and circumstances of the reality" of the Assignment and plaintiff's conduct. In particular, defendants argue the trial court failed to address during the time period of the alleged breach that plaintiff notified European of a "reduction" in rent as a compromise of the NJDOT taking and accepted the reduced rental payments for nine consecutive months—from April to December 2020.

To properly make a determination that defendants breached the Lease Agreement, it was incumbent upon the trial court to view the record with all legitimate inferences drawn in defendants' favor, and to determine there was no genuine issue of material fact under Rule 4:46-2(c). At a minimum, the trial court's conclusion required competent evidence substantiating plaintiff's

19

allegation that its unilateral reduction and acceptance of reduced rental payments from European, without reservation of any rights and no notice of a breach, ratified the Lease Agreement and constituted a waiver of any allegedly past rent due. The trial court erred by not considering reasonable inferences regarding the parties' course of conduct and simply relying on section 12.2 of the Lease Agreement. Plaintiff refutes whether it waived section 12.2.

We conclude the record presents a genuine issue of material fact on the issue of waiver. Before the trial court, plaintiff demonstrated nothing more than a substantial monetary claim for unpaid rent. A reasonable factfinder considering the evidence set forth in this record—and lack of plaintiff's response to defendants' counterstatement of undisputed facts—with all legitimate inferences drawn in defendants' favor could find plaintiff did not prove by a preponderance of the evidence that defendants breached the Lease Agreement. Plaintiff was not entitled to judgment as a matter of law on its waiver claim. Therefore, we are constrained to vacate the orders under review and remand to the trial court to consider section 12.2 anew and re-issue its decision and order.

VI.

Finally, we address defendants' argument the trial court erred by failing to consider that the doctrine of laches applies to plaintiff's failure to provide timely

20

notification of the purported unpaid rent. According to defendants, plaintiff waited nearly five years to raise its claims for unpaid rent, and European was "blindsided" because it had operated during that time on the "reasonable assumption" that its rental payments were in full compliance with the Lease Agreement. Plaintiff counters that the trial court did not err because there are no facts that support the application of the doctrine of laches, and the complaint was filed within the statute of limitations period.

Broadly, laches is "'a defense developed by courts of equity' to protect defendants against 'unreasonable, prejudicial delay in commencing suit.'" SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC, 580 U.S. 328, 333 (2017) (quoting Petrella v. Metro-Goldwyn-Mayer, Inc., 572 U.S. 663, 667, 678 (2014)). Under New Jersey law, "[l]aches is an equitable doctrine, operating as an affirmative defense that precludes relief when there is an 'unexplainable and inexcusable delay' in exercising a right, which results in prejudice to another party." Fox v. Millman, 210 N.J. 401, 417-18 (2012).

"Unlike the mechanical application of a fixed time prescribed by a statute of limitations," id. at 418, "[w]hether laches should be applied depends upon the facts of the particular case and is a matter within the sound discretion of the trial court," Mancini v. Twp. of Teaneck, 179 N.J. 425, 436 (2004). "The key

21

ingredients" to the applicability of laches "are knowledge and delay by one party[,]" coupled with a detrimental "change of position by the other [party]." L.V. v. R.S., 347 N.J. Super. 33, 39 (App. Div. 2002).

Thus, factors considered in determining whether to apply laches include "[t]he length of delay, reasons for delay, and changing conditions of either or both parties during the delay." Ibid. (quoting Lavin v. Bd. of Educ. of City of Hackensack, 90 N.J. 145, 152 (1982)). "While laches does not arise from delay alone," inequity "more often than not, will turn on whether a party has been misled to his harm by the delay." Ibid. (quoting Lavin, 90 N.J. at 153). However, the doctrine of laches is only appropriate "in the absence of the statute of limitations." Fox, 210 N.J. at 418. Where an action at law is governed by a statute of limitations, the equitable doctrine of laches cannot apply to bar a suit commenced within the limitations period. Id. at 419-20.

Under N.J.S.A. 2A:14-1(a), "[e]very action at law . . . for recovery upon a contractual claim or liability . . . shall be commenced within six years next after the cause of any such action shall have accrued. The statute of limitations begins when "the party seeking to bring the action ha[s] an enforceable right." Metromedia Co. v. Hartz Mountain Assocs., 139 N.J. 532, 535 (1995) (internal quotation marks and citations omitted). A breach of contract action accrues on

"the date upon which the right to institute and maintain a suit first arises." Holmin v. TRW, Inc., 330 N.J. Super. 30, 35 (App. Div. 2000) (quoting Hartford Accident & Indem. Co. v. Baker, 208 N.J. Super. 131, 135-36 (1985)). Specifically, the right to institute and maintain a suit for a breach of contract accrues either when the breach occurs or when the plaintiff, with the exercise of due diligence, should have discovered the breach. Fauver, 153 N.J. at 105.

Here, the record shows plaintiff demanded the arrearages following five years of acquiescence after defendants opted not to renew the Lease Agreement. The trial court made no specific findings on the doctrine of laches as mandated by Rule 1:7-4(a). European proffered it relied on plaintiff's conduct and reasonably believed its payments satisfied its obligations under the Lease Agreement. In short, this critical factual question was left undecided by the summary judgment record.

Reversed, vacated, and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-3504-23